OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### AND PREROGATIVE COURT

### JUNE TERM, 1888.

---

JOSEPH R. DENNIS and JAMES D. WOGLOM, appellants,

v.

MILLARD R. JONES, respondent.

44 513
58 118
f58 122

1. The defrauded party to a contract has but one election to rescind, which he must exercise with reasonable promptitude after the discovery of the fraud; and when he once elects he must abide by his decision.

2. Delay in the rescission of the contract, payments in pursuance of it, and continued dealing with it and with reference to the fraudulent transaction, after discovery of the fraud, may be shown as evidence of an election to treat a fraudulent contract as valid.

3. Where, after knowledge of fraud in the sale of a skating rink, the purchasers, without complaint of the fraud which had been practiced upon them, paid portions of the purchase-money and repeatedly promised to pay the remainder of it, dealt with the rink as their property, made changes in it and in the method of conducting its business, advertised it for sale, and negotiated for the disposition of it, they were held to have elected to abide by their contract.

513 [33]

Dennis *v.* Jones.

On appeal from a decree advised by *Washington B. Williams, Esq.*, Advisory Master, who filed the following conclusions:

The question in this case is of fact only. The defendants' position was clearly and concisely stated by their counsel to be that the sale was induced by representations made by the vendor, on which the purchasers had a right to rely, and did rely, and which were false.

I think this is not shown. It appears to me, from the whole evidence, that the representations were fairly within the line of recommendation, and were reasonably sustained by the facts; that defendants failed in their effort to show a fraudulent packing of the rink on the occasion mentioned; that they had ample opportunity to examine the accounts, and availed themselves of it; and that, so far as the failure of their enterprise can be accounted for on the evidence, it was due partly to their own fault and partly to the general collapse of the skating rink business.

Their conduct seems also to have been accordant with this view. They do not appear to have discovered that they had been defrauded until suit was brought.

A decree should be made establishing the mortgage and dismissing the cross-bill, with costs.

*Mr. Elwood S. Leary* and *Mr. Ludlow McCarter*, for the appellants.

*Mr. Craig A. Marsh*, for the respondent.

The opinion of the court was delivered by

THE CHANCELLOR.

On the 14th of February, 1885, the respondent agreed to sell to the appellants his skating rink at Plainfield, in this State, for the sum of $10,000, $5,000 of which was to be paid in cash, and the other $5,000 was to be secured by a chattel mortgage, upon the rink, and paid in monthly payments of not less than $300 each, on or before April 1st, 1886.

When the agreement was completed the appellants were put in possession of the purchased property, and a week later paid $5,000, received a bill of sale of the rink, and gave their chattel mortgage to secure the $5,000 remaining unpaid.

To a bill to foreclose that mortgage, filed in September, 1885, the appellants set up, by answer and cross-bill, that they were defrauded by the respondent at the sale of the rink, by his misrepresentation of the profits that he had received from it and the character of its patrons. They allege that he declared that his net profits from his operation of the rink had been $1,000 per month, and that the rink was patronized by numbers of the most respectable people in Plainfield.

They admit that, within a week from the time they took possession of the rink, they discovered that the conduct of some of the respondent's employees with disreputable characters, who were allowed to frequent the place, had driven away many of the better class of patrons, and it abundantly appears, by the proofs, that they also speedily found out that the net profits to be derived from the rink were inconsiderable in comparison with a net profit of $1,000 per month. So great, indeed, is the disparity between the appellants' receipts and the profits which they allege the respondent claimed to have received, that it was plainly impossible for his representations to have been true. Notwithstanding these discoveries had been made, on April 2d, 1885, the appellants paid the respondent $300 on account of his mortgage, and on the 13th of June the further sum of $600, and thereafter repeatedly promised to pay him the full amount secured by the mortgage, and, until foreclosure of the mortgage was commenced, failed even to intimate to him that they had been defrauded. During the time that elapsed between the discoveries of the fraud and the foreclosure, they dealt with the property as their own, made changes in it and in the method of conducting its business, advertised it for sale, and negotiated with third persons for the disposition of it.

While they thus dealt with it, and prior to the foreclosure, it became plainly apparent that the popular *furor* for roller-skating

was waning, and that the business they had entered upon must soon collapse.

Under this condition of affairs they now seek to rescind their contract because of the fraud they allege to have been practiced upon them.

The Master rested his decision of the case upon the failure of the appellants to establish the alleged fraud, reaching his conclusion after a careful examination of several hundred pages of conflicting testimony.

It is unnecessary for us to determine whether the proofs establish the fraud, for it is apparent that, if there was in fact the fraud complained of, it, in substance, became manifest to the appellants months before the foreclosure suit was commenced. When it was discovered, it was the appellants' duty, with all reasonable diligence, to disaffirm the contract. They could not derive all possible benefit from the transaction, and then be relieved from their obligation by a rescission, or refusal to perform, on their part. It would be most inequitable to permit them to hold the rink and its business, in apparent acquiescence in the fraud, until the collapse of the business was assured, and then rescind their contract.

It is the rule that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after discovery of the fraud, and that when he once elects he must abide by his decision. *Bigelow on the Law of Fraud 436.* Delay in rescission of the contract is evidence of a waiver of the fraud, and an election to treat the contract as valid. *Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq. 311, 319 ; Brown* v. *Mutual Benefit Life Ins. Co., 5 Stew. Eq. 809; Oakey* v. *Cook, 14 Stew. Eq. 350; Bigelow on Law of Fraud 438; 2 Pomeroy's Eq. Jur.* § *817 ; Baird* v. *New York, 96 N. Y. 567 ; Farlow* v. *Ellis, 15 Gray 229.* So, payments of purchase-money, after knowledge of the fraud, are evidence to the same effect. *Kunckolls* v. *Lea, 10 Humph. 577.* And so also is the continued dealing with the property purchased and in reference to the fraudulent transaction, as if the contract were subsisting and binding. *Bassett* v. *Brown, 105 Mass. 551 ;*

*1 Story's Eq. Jur. (13th ed.) 227 ; 2 Kent's Com. (11th ed.) 637 ; Vigers* v. *Pike, 8 Cl. & Fin. 562 ; Schiffer* v. *Dietz, 83 N. Y. 300.*

I think that, in the case now considered, it is plain that, after the appellants had knowledge of all the substantial features of the alleged fraud, and were fully aware of the deceit which had been practiced upon them, they so acted as to afford plenary evidence of an election to abide by their contract. Their election thus made was irrevocable.

The decree should be affirmed.

*Decree unanimously affirmed.*