WILLIAM B. REED, appellant,

*v.*

BENZINE-ATED SOAP COMPANY et al., respondents.

[Submitted December 9th, 1912.  Decided March 3d, 1913.]

A party having the election to rescind a contract or rely on it must exercise such election promptly and before the other party has materially changed his position; and failure so to rescind will be evidential of his election to stand on the contract.

On appeal from a decree advised by Vice-Chancellor Walker, who filed the following memorandum:

The original bill was filed to restrain the dissolution of the corporate defendant pending an opportunity for the complainant, who was a stockholder, to inspect the books. The defendants Smith and Lowry filed an answer and cross-bill. A motion was made to strike out the cross-bill on the ground that the relief it sought was not relevant, pertinent or germane to the matters in issue raised by the bill of complaint. The motion was overruled and the application denied. A decree *pro confesso* was then entered against the complainant on cross-bill, and, on depositions taken *ex parte,* a final decree was made in favor of the defendants on the cross-bill. Afterwards the complainant, on notice, secured an order opening the default and permitting him to file an answer or replication. Complainant then filed a replication traversing the cross-bill, and afterwards, by permission of the court, filed a supplemental bill.

The Benzine-ated Soap Company was incorporated by Reed (complainant), Smith and Lowry (defendants). Each contributed $8,000 to the capital stock. Reed's $8,000 was borrowed from Smith and Lowry to secure which Reed left with them, as collateral security, his certificates of stock and also assigned to

them a life insurance policy and a mortgage covering lots in Pennsylvania.

The complainant's contention is, that the cross-bill tendered a rescission of the contract (of June 10th, 1902), under which the parties agreed to and actually did form and cause to be incorporated the defendant company, and claims that by the supplemental bill he accepted the rescission, and is therefore entitled to have released and delivered to him the collateral security which he pledged for the payment of the loan for the purchase of the stock at the time the corporation was formed.

The defendants on the other hand contend that the cross-bill does not amount to a rescission of the contract, at least not in an unqualified sense, whereby the complainant would be entitled to a return of his collateral, but that the pleading in effect is one for the annulment of the contract on the ground of the complainant's fraud, and that he is not entitled to a restoration of the *status quo ante* because the defendants have suffered loss in the transaction at his hands.

It is certainly significant that the complainant when first confronted with the cross-bill did not obtain leave to file a supplemental bill that he might be able to accept the alleged rescission of the contract, but first moved to strike out the cross-bill as not germane to the original bill, then filed a replication, and then, after the situation materially changed, filed his supplemental bill. That change was this: In the meantime the company had been dissolved under the terms of the agreement of June 10th, 1902, and its affairs liquidated, leaving the sum of $173.17 as a dividend on the shares of stock pledged as collateral by Reed for the loan of $8,000 by Smith and Lowry to enable him to purchase that stock. The investment in the stock of the company by the three parties was practically a total loss. The collateral pledged by Reed was realized on and produced far less than the balance of his indebtedness on the $8,000 block of stock; but, notwithstanding, Reed wants the collateral or its value returned to him, in which event Smith and Lowry will not only lose their own stock investments but will be obliged to shoulder Reed's loss as well; and this upon the theory of a rescission which he himself did not treat as such until it became his interest and only

refuge to do so, having before taken two inconsistent positions with reference to the matter.

In my judgment equity and good conscience require the denial of the relief sought by the complainant under his supplemental bill, and I will so advise the chancellor.

*Mr. Thomas B. Hall* and *Mr. Gilbert Collins,* for the appellant.

*. Mr. Lewis Starr,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

We conclude that the decree below should be affirmed, and have little to add to the views expressed as above by the present chancellor. When the complainant as a stockholder prayed an injunction to restrain the dissolution proceedings, his claim as a stockholder was met by a cross-bill alleging that defendants Smith and Lowry were induced to go into the corporate venture by fraudulent statements of complainant; that after the incorporation he falsified the expense accounts and employed incompetent and extravagant salesmen so as to depreciate the company as a business venture and induce defendants to sell out at a low figure; and praying that the contract of June 10th, 1902, be set aside, that complainant be decreed to be not entitled to any rights thereunder and not a stockholder of the company, and that such stock as stood in his name be decreed to belong to Smith and Lowry as the actual subscribers therefor. This is the "rescission" that complainant says in his supplemental bill was tendered and which he by that bill wished to accept. There can be little doubt that if he had "accepted" it by joining promptly in the prayer of the cross-bill, he should have had his collateral back. That was the object of his contention below under the supplemental bill and is the object of this appeal. The acceptance had to be prompt because when the cross-bill was filed on April 7th, 1905, dissolution proceedings were then pending; the certificate of dissolution was filed on May 24th and the property

of the company sold in July. During all this time he was treated, except in the chancery suit, as though he was a legal stockholder. About the same time, viz., July, 1905, the defendants realized on his collateral to meet the amount due them for advances to pay for his stock. It is thus evident that by the complainant's failure to accede promptly to the claim that he was not a stockholder, the position of affairs has changed so that the *status quo* cannot be restored. But complainant not only did not accede to the prayer of the cross-bill but resisted it, by moving to strike it out; and during months of litigation maintained the claim that the cross-bill should not be considered by the court.

It is well settled in this court that where a party has an election to rescind he must elect promptly, and having elected must abide by his decision; and that failure to rescind within a reasonable time is plenary evidence of his election not to do so. *Dennis* v. *Jones, 44 N. J. Eq. (17 Stew.) 513; Clampitt* v. *Doyle, 73 N. J. Eq. (3 Buch.) 678; Faulkner* v. *Wassmer, 77 N. J. Eq. (7 Buch.) 537.* These were all cases of rescission by act of the defrauded party, and it is not clear who was defrauded in the present case, fraud being claimed on both sides; but the rule is equally applicable where rescission is tendered or offered by one party to the other and an election thus given to accept or refuse it. Such was the case here. Complainant, claiming as a stockholder and threatened with dissolution of the company and sale of his collateral, was put by the act of defendants in a position where by resigning his claim to the stock he could cancel his indebtedness and have his money back. Clearly he was not entitled to both stock and collateral. He elected to maintain his claim on the stock, and must abide the result of his choice.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY—12.

*For reversal*—None.