This is a suit to foreclose a mortgage. A counter-claim was filed by defendant Curtis, alleging that defendant Colletta induced him to purchase said business under the false representation that "he, Alphonso Colletta, had done $9,000 worth of business six months prior to October 3d 1927, and that the business consisted of selling intoxicating liquor, and that the bicycle business was used by Colletta for outward appearances for covering up the real business of selling intoxicating liquors."
On October 3d 1927, Curtis purchased a bicycle business at 4858 Springfield avenue, Summit, from Colletta for $4,000. He paid $500 in cash, and the balance was secured by a chattel mortgage and a mortgage on real estate in the sum of $3,500. This mortgage, it is now sought to foreclose. The chattel mortgage was foreclosed, and the amount realized was $470. The $3,500 mortgage was assigned to complainants. Prior to the date of assignment, Curtis paid on account of principal $100. Subsequent to the assignment Curtis paid two additional sums of $100 each and interest. Curtis moved from the premises a few months after the sale although his lease extended beyond the period of removal. The reason for the removal was because the landlord was remodeling the premises. This caused a loss of business, and Curtis made a claim against the landlord. The landlord demanded proof. Curtis thereupon signed and swore to an affidavit which was introduced in evidence. In this he states that he was in the store daily for four or five weeks before he purchased the business. That he examined the books, records and cash register and that the receipts were $750 per month, and that the only reason the business had fallen off was because the building was being remodeled. Obviously, if this be true, the falling off could not have been on account of failure to sell liquor. Curtis has told two stories which are directly contrary to each other. I prefer to accept the one which upholds the written contract of mortgage told before there was any trouble over foreclosure. Moreover there is no proof that Colletta did not legitimately make $9,000 *Page 127 
six or seven months before the sale. He says he did and his evidence is uncontradicted.
Again Curtis did not proceed with the promptitude necessary in cases of rescission. He says immediately after he took title people came in seeking to purchase liquor. This continued for months. He, however, continued to sell the chattels and to make payments on account of the mortgage. He seeks to rescind now when Colletta cannot be placed in status quo, because he cannot redeliver the chattels. If he thought he had acquired a speak-easy instead of a bicycle business he should have acted immediately to rescind and have offered to put Colletta instatus quo.
In the case of Ginsberg v. Wolters, 94 N.J. Eq. 532, the court of errors and appeals said, adopting the opinion of Vice-Chancellor Foster in this court:
"From the facts recited, and others not mentioned, from this lengthy record, there is ample proof, not only of defendants' delay in electing to rescind promptly after learning of the alleged fraud, but we have in addition conclusive proof of what the courts call conduct evidence of defendants' election to abide by this bargain and to enjoy the benefits of it. The first undisputed offer to rescind is made by the answer filed March, 1921, eight months after the transaction, five months after they discovered the fraud in October, two months after defendants state they knew completely to what extent they had been defrauded, over a month after they had used the rents from the property, and this offer was made only after they had been restrained from collecting further rents."
"Applying to this situation the rule of the cases in this court and in the court of errors and appeals [Dennis v. Jones,44 N.J. Eq. 513; 14 Atl. Rep. 913; 7 Am. St. Rep. 899; Clampitt v.Doyle, 73 N.J. Eq. 678; 70 Atl. Rep 129; Faulkner v. Wassmer,77 N.J. Eq. 537; 77 Atl. Rep. 341; 30 L.R.A. (N.S.) 872, andReed v. Soap Co., 81 N.J. Eq. 182; 86 Atl. Rep. 263], it must be held that defendants did not promptly elect to rescind and that their failure to rescind within a reasonable time is plenary evidence of their election not to do so, and therefore the attempted rescission made by the answer was made too late, as it was made after defendants, *Page 128 
by their conduct, had elected, with complete knowledge of the alleged fraud, to ratify and to keep the benefits of the transaction."
In Maioran v. Calabrese, 100 N.J. Eq. 315, the court of errors and appeals, speaking through Mr. Justice Katzenbach, said:
"It is well settled that one induced to enter into a contract by fraudulent misrepresentations has a choice of two remedies. The first remedy is that if the party who alleges he has been defrauded desires to rescind the contract on the ground of fraud he must restore to the other party to the contract what he has received, and recover what he has paid or parted with under the terms of the contract. The rescission must be made promptly.Byard v. Holmes, 33 N.J. Law 119; Kvedar v. Shapiro,98 N.J. Law 225."
"There is also another ground which in our opinion sustains the decree advised, to which reference should be made. The contract was made on June 4th, 1925. The conveyances were made on July 15th, 1925. The bill was filed on February 11th, 1926, approximately eight months after the contract had been performed. The appellant states that she discovered on August 20th, 1925, that the lots she acquired were not the lots shown her. She, therefore, waited over five months before electing to rescind the contract, so far as parcel C was concerned. If such a partial rescission could have been made we think it was not in the present case made with sufficient promptness to entitle the complainant below to proceed in equity."
For these reasons I will advise a decree dismissing the counter-claim and directing the foreclosure to proceed. *Page 129