The facts in this case are as follows:
The complainants, on August 27th, 1925, entered into an agreement, in writing, with the defendant wherein they agreed to purchase from the defendant the premises described in the bill of complaint filed herein for the sum of $12,000, to be paid as follows: $2,000 cash and the balance of $10,000 by executing three promissory notes, each in the sum of $3,333.33, and payable respectively in one, two and three years from the date thereof, the same to be secured by a mortgage deed on said premises. The said agreement to purchase was carried out by the complainants on September 14th, 1925, at which time they paid the sum of $2,000, executed the said notes and mortgage deed and received a deed for the said premises from the defendant.
Regarding the facts, there is divergence of testimony whether Henry Dale, Jr., made statements that the property *Page 387 
was high and dry, and whether the notes were or were not a personal obligation. I do not think complainants have established these facts, and I conclude that no false representations were made.
Complainants procured a survey in December, 1925, showing pools of water on the premises. In April, 1926, complainants paid the semi-annual installment of interest due at that time. There was no objection as to water on the premises. On October 7th, 1927, a reconveyance was offered Mr. Nevins and sometime thereafter this bill was filed. It alleges that Henry Dale, Jr., was the agent of the defendant. The testimony, however, merely shows that defendant employed Dale as a real estate agent for the purpose of selling the property. The fraudulent representations of a real estate agent do not bind the defendant when he had no knowledge of them.
Complainants admit that they have been unable to show that Dale's fraudulent representations, if there were any, were either known to or authorized by the defendant. Therefore, the defendant is not bound by any that may have been made. I so decided in the case of Austin J. Waldron, Inc. v. Cutley, 105 N.J. Eq. 586,
in which I said:
"Even if they were, they had no right to bind him by misrepresenting facts, when he had no knowledge of the misrepresentations. It is a well known principle of law that a real estate agent is not a general agent, and therefore the real estate agent's acts are not binding, unless within the scope of his authority."
This case was affirmed by the court of errors and appeals in105 N.J. Eq. 586.
It also appears that Dale was not only broker for the defendant but became co-principal with the complainants without defendant's knowledge. This would cast upon him the duty of exercising good faith toward complainants as a co-principal but not as defendant's agent. However, this point is unimportant in the decision of the case because, as I have already said, defendant cannot be held for any misrepresentations made by Dale.
There is another question that should be considered: the *Page 388 
delay of complainants in attempting to rescind. They had a survey of the property in December, 1925, which showed the condition of which they now complain. Yet they paid interest on the mortgage in April, 1926, and did not tender a reconveyance until October, 1927. In the case of McKirgan v. Curtis, 104 N.J. Eq. 125, I said, quoting from Ginsberg v. Wolters, 94 N.J. Eq. 532:
"From the facts recited, and others not mentioned from this lengthy record, there is ample proof, not only of defendants' delay in electing to rescind promptly after learning of the alleged fraud, but we have in addition conclusive proof of what the courts call conduct evidence of defendant's election to abide by this bargain and to enjoy the benefits of it. The first undisputed offer to rescind is made by the answer filed in March, 1921, eight months after the transaction, five months after they discovered the fraud in October, two months after defendants state they knew completely to what extent they had been defrauded, over a month after they had used the rents from the property, and this offer was made only after they had been restrained from collecting further rents.
"Applying to this situation the rule of the cases in this court and in the court of errors and appeals (Dennis v. Jones,44 N.J. Eq. 513; 14 Atl. Rep. 913; 6 Am. St. Rep. 899; Clampitt v.Doyle, 73 N.J. Eq. 678; 70 Atl. Rep. 129; Faulkner v. Wassmer,77 N.J. Eq. 537; 77 Atl. Rep. 341; 30 L.R.A. (N.S.) 872, andReed v. Soap Co., 81 N.J. Eq. 182; 86 Atl. Rep. 263), it must be held that defendants did not promptly elect to rescind and that their failure to rescind within a reasonable time is plenary evidence of their election not to do so, and therefore the attempted rescission made by the answer was made too late, as it was made after the defendants, by their conduct, had elected, with complete knowledge of the alleged fraud, to ratify and to keep the benefits of the transaction."
See, also, Faulkner v. Wassmer, supra, in which the court of errors and appeals said:
"We agree with the learned vice-chancellor that Mrs. Faulkner purchased the lot in question upon an untrue representation *Page 389 
of such a nature that, upon the discovery of its untruth, she was entitled to elect to rescind the sale. We do not, however, agree that such election was still open to her four months later when the present bill of complaint was filed declaring for the first time her election to rescind. At this time * * * her right to elect, which arose on or about * * * no longer existed, not upon the doctrine of laches, discussed in the conclusions filed in the court below, but upon the ground that the lapse of such a length of time under the circumstances afforded plenary proof of an election by her not to rescind to which conclusive effect should have been given."
I will, therefore, advise a decree dismissing the bill of complaint and referring the matters raised in the counterclaim to a master to fix the amount due by complainants to defendant.