JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON,
EDMUND B. LEAMING, JAMES E. HOWELL, VIVIAN M.
LEWIS, JOHN H. BACKES, JOHN GRIFFIN AND
JOHN E. FOSTER, VICE-CHANCELLORS.

WILLIAM ALLFATHER                                       :

*v.*

PETER SCHLICHER et al.

[Decided March 31st, 1916.]

1. Certain persons organized a railroad corporation under the forms
of law, but did not subscribe and pay in the amount required by the
then existing General Railroad act. *Gen. Stat. p. 2638 § 2.* The amount
required by the act was not paid to the directors for deposit with the
state treasurer, but was raised upon a promissory note, made or endorsed

1

by the stockholders and directors for the accommodation of the promoter of the enterprise, under an agreement that they were not to be liable for anything upon any account. This was a fraud upon the statute, and, therefore, an illegal transaction as between the parties to it.

2. One of the parties participating in the organization of a railroad corporation, without the *bona fide* stock subscription and payment required by the statute, who was compelled to pay more than his proportionate share of loss following in the wake of the enterprise, has no standing to recover from the others concerned with. him sums which he paid in excess of those which they paid, in order to equalize losses between them.

3. The law will not aid either party to an illegal contract, but will leave them where it finds them.

On bill for contribution.

*Mr. Harry J. Able,* for the complainant.

*Mr. Alan H. Strong,* for Peter Schlicher.

*Mr. Barton B. Hutchinson,* for the estate of James C. Robbins, deceased.

*Mr. Peter Backes,* for the estate of William H. Martin, deceased.

WALKER, CHANCELLOR.

William Allfather paid $623.31 more than his proportionate share of an amount secured by a promissory note upon which he, William H. Martin, Peter Schlicher and James C. Robbins were endorsers. The note was one of a series, the first one of which originated in the way hereafter mentioned. .

A certificate of incorporation of the Trenton, Lakewood and Atlantic Railway Company was made and executed March 4th, 1903, by thirteen persons who became subscribers to its capital stock; among them were William Allfather, William H. Martin, Peter Schlicher and James C. Robbins. In the articles of association the corporators certified over their signatures that they had formed themselves into a company under the act of the legislature for the purpose of constructing, maintaining and operating a railroad for public use, when, in fact, they had no inten-

tion of constructing, maintaining or operating a railroad. This company was organized under the then existing General Railroad law of 1873. *Gen. Stat. p. 2638.* Section 2 of that act, as amended March 4th, 1879 (*P. L. 1879 p. 78; Gen. Stat. p. 2649*), provided:

"That such articles of association shall not be filed and recorded in the office of the secretary of state until at least two thousand dollars of stock for every mile of railroad proposed to be made is subscribed thereto and paid, in good faith and in cash, to the directors named in said articles of association, nor until the said directors shall have deposited the said money so subscribed and paid to them with the treasurer of the State of New Jersey, who shall be the custodian of the same, and shall hold the same, subject to be repaid, * * * nor until there is endorsed on such articles of association, or annexed thereto, an affidavit, made by at least five of the directors named in said articles, that the amount of stock required by this section has been, in good faith, subscribed and paid in cash as aforesaid, and that it is intended, in good faith, to construct * * * the road mentioned in such articles of association, which affidavit shall be recorded with the articles of association as aforesaid."

The length of the railroad was certified to be forty miles, as nearly as could be estimated, by the corporators. This required that at least $2,000 of stock for every mile, making $80,000 in all, should be subscribed and paid in good faith and in cash to the directors for deposit with the state treasurer. Not a dollar was so paid, but the required $80,000 for deposit with the state treasurer was raised upon a promissory note upon which the stockholders and directors were parties, for the accommodation of George O. Vanderbilt, one of their number, who was the promoter of the enterprise. The company was conceived and exploited by Mr. Vanderbilt, and treated by him as his individual property, in which the stockholders and directors acquiesced. He promised and agreed with them upon the organization of the company that they were not to be liable for anything upon any account; that he was going to have a survey and profile made, and whenever he sold the road he would give each of them $1,000, the rest to be his. He also told them that he had no intention of building the road and wished them to aid him by the use of their names. It was entirely a speculative enterprise on his part.

The affidavit required by the act was made by the defendant Peter Schlicher, and by William H. Martin and James C. Robbins, whose personal representatives are defendants in this suit. The complainant, although not one of the affiants, was one of the corporators and certifiers to the untrue statement of the purpose for which the company was organized, and who, with the others, did not make any payment on his subscription for stock. This transaction was clearly a fraud upon the statute.

Vice-Chancellor Van Fleet, in *Jersey City Gas Co.* v. *Dwight, 29 N. J. Eq. 242,* held that a subscription in good faith to corporate stock must be real, actual and honest, as distinguished from fictitious, pretended and deceptive. These words aptly describe the condition of the pretended subscription to the nonpaid stock of the Trenton, Lakewood and Atlantic Railway Company. And (at *p. 246*) the vice-chancellor said that any attempt to acquire corporate functions by a pretentious or evasive compliance, no matter what the papers might say on their face, must be denounced as a fraud upon the law. It is true that Vice-Chancellor Van Fleet, in *Jersey City Gas Co.* v. *Dwight,* went further and held that an attempt to acquire corporate functions by a pretentious or evasive compliance with the law will be declared abortive on the ground of fraud, and he enjoined the defendant in that case from exercising certain corporate powers. The doctrine and decision just mentioned appears to have been overruled by the court of errors and appeals in *National Docks Railroad Co.* v. *Central Railroad Co., 32 N. J. Eq. 755,* although the *Jersey City Gas Company Case* was not mentioned in the opinion of the court of last resort. That court's decision, as just stated, was, however, adverted to and acknowledged by the same vice-chancellor in his later opinion in *Elizabethtown Gas Light Co.* v. *Green, 46 N. J. Eq. 118, 130,* as having the effect which I have ascribed to it. But in the *National Docks Case* there is no repudiation of the doctrine enunciated by Vice-Chancellor Van Fleet, to the effect that any attempt to acquire corporate functions by a pretentious or evasive compliance with the statute is a fraud upon the law. It is plain that that fraud will not *ipso facto* operate to destroy the corporation, or authorize the court of chancery to enjoin its exercise of corporate func-

tions, the proper remedy being by *quo warranto,* or information in the nature thereof, instituted by the attorney-general in the supreme court. But it is equally clear that as between the individual parties to the fraud the unreversed doctrine of the *Jersey City Gas Company Case* applies.

The doctrine of fraud upon the law is illustrated by the supreme court in *Plantner* v. *Ryan, Executor,* '76 *N. J. Law 239,* wherein it was held that an assignment by a plaintiff without consideration, solely for the purpose of qualifying the assignor as a witness against the estate of a deceased party, could be defeated by appropriate action in the given case; and that to permit the real, though not nominal, plaintiff to testify would be to connive at a fraud upon the Evidence act.

There is a line of cases of which *Volney* v. *Nixon (Court of Errors and Appeals, 1904), 68 N. J. Eq. 605,* is an example, which hold that it is the settled policy of the courts of this state not to aid in the enforcement of contracts having an illegal purpose, even though the objectionable feature has been accomplished and there remains only the distribution of the proceeds among the contracting parties.

The case at bar presents a scheme whereby the parties clothed themselves with corporate powers for the purpose of perpetrating a fraud—that is, organized a railroad corporation without the *bona fide* stock subscription and payment required by the statute, for the sole purpose of permitting one of their number, a promoter, to exploit the corporation, who promised to give the others a certain gratuity each in case he effected a sale of the company's property and franchises. Such a transaction falls directly within the doctrine of *Volney* v. *Nixon, supra,* and, as stated above, cannot be enforced *inter partes.* Therefore, he who was compelled to pay more than his proportionate share of loss following in the wake of the enterprise under review, which proved unsuccessful, has no standing to recover from the others concerned with him, sums which he paid in excess of those which they paid, in order to equalize losses between them.

The law will not aid either party to an illegal contract, but will leave them where it finds them. If the contract be executory it will not be enforced, and, if executed, the price paid will

not be restored.  *Ellicott* v. *Chamberlin* (*Court of Errors and Appeals, 1884*), *38 N. J. Eq. 604.*

This view renders it unnecessary to decide the mooted question whether or not one of the parties, William H. Martin, since deceased, whose estate issued, was insane at the time he obligated himself by endorsing the note in question.

The bill will be dismissed, but without costs.  See *Ellicott* v. *Chamberlin. supra* (at *p. 612*).