The bill, as supplemented, is by the vendee against the vendors to compel them to convey a parcel of land in South Orange as they had contracted to do.
In the preface to the contract, dated March 10th, 1924, it is recited that the complainant was willing to buy if it could obtain a permit from the village of South Orange to erect on the land a four-story apartment-house, and that the defendants were willing to enter into a contract of sale and to give to the complainants until May 1st, 1924, to obtain the permit, and that the complainant was willing to enter into such a "conditional agreement," with the understanding that time was of the essence of the contract, and that in the event that the complainant failed to obtain a permit, or declined to take the property without a permit, on or before May 1st, the contract should be void upon the return to the complainant of its deposit of $1,000. In the body of the agreement the defendants bound themselves to convey the land to the complainant on May 1st, 1924, for the consideration therein stated, the contract, however, to be binding upon the complainant forthwith upon obtaining the permit by May 1st, and that title should be closed within thirty days after obtaining it, or such longer time as might be agreed upon; and if the complainant failed to obtain the permit before May 1st, the agreement should be null and void upon the return of the deposit. It was further agreed that if the complainant failed to apply for the permit within twenty-one days after the court of errors and appeals handed down a favorable decision in theNutley Zoning Case (Ignaciunas v. Nutley,125 Atl. Rep. 121), and which time was not to run until notice in writing of the decision was given by defendants to the attorney of the complainant, then the defendants could apply for the permit, and if granted the contract should be binding on the complainant. Before the time expired, on April 30th, a further agreement was entered into which recites that the parties desired the contract to remain effective until June 1st, 1924, and it was stipulated "that the time of conditional settlement be extended to June 1st, *Page 565 
1924; that if the court of errors and appeals have not rendered its decision by said time, affirming the decision of the supreme court in respect to zoning ordinances, then the original contract hereinbefore referred to shall be null and void and the parties of the first part shall return to the party of the second part the deposit paid by virtue of and mentioned in said original contract, to the same effect as stated in the provisions contained in the original contract." The decision was handed down May 19th, 1924, but was not regarded as controlling the situation in South Orange. The complainant did not apply for a permit nor elect to take without the permit by June 1st. On August 8th the complainant filed its bill setting up the contract and the extension agreement; its failure to obtain the permit and its refusal to take the property without the permit by June 1st, and that the court of errors and appeals had not rendered its decision before that time (which was not so), and that it had been ready and willing, but that the defendants had not been able to perform, and that it was entitled to the return of its deposit, and prayed for relief accordingly, and a lien on the property. The defendants answered that with the knowledge and consent of the complainant they, the defendants, demanded a permit from South Orange; that upon refusal, at the request and upon the consent of the complainant, they, in March, 1924, applied to the supreme court for a mandamus; that it was argued at the May term; that a decision was expected at the October term; that all was done in pursuance of the contract of sale and the extension agreement, and with the knowledge of the complainant that the decision would not be secured before June 1st; that the complainant waived the provisions of the contract for the performance and that it must wait until the coming down of the decision, and was not entitled to the $1,000 deposit unless an adverse decree be rendered in the suit. In reply the complainant denied the waiver and the facts alleged, and insisted that it was not required to wait. The cause was set down for hearing January 14th, 1925. At that time the supreme court had granted an alternative writ of mandamus *Page 566 
(Ingersoll v. South Orange (September 13th, 1924),126 Atl. Rep. 213), and the suit for a peremptory writ was pending, and the hearing was adjourned without day at the request of complainant's counsel, and upon his representations to defendants' counsel, to use his own language, that "so long as it is pending in court (the mandamus suit) and we are going to take the property if it is in our favor, let us call the hearing off," to which defendants' counsel agreed. On March 26th, 1925, a peremptory writ was ordered (128 Atl. Rep. 393), and South Orange took an appeal. Shortly thereafter defendants' counsel, Davis, notified complainant's solicitor, Kaplan, that his clients felt that the complainant should take the property without their having to go to any additional expense of the appeal, or that they would return the deposit. The complainant thereupon offered to pay the expenses, which was unacceptable and declined. Kaplan and the Blums now say that they were then willing to take the title, and Kaplan ventured so far as to say that he told Davis so, but it is more in harmony with the situation to believe the Blums and their counsel, Unger and Davis, that the proposition to take the title was neither accepted nor declined, and also to believe that the complainant's inclination was not to take the title pending the appeal. On April 14th Davis wrote Unger, offering to pay back the $1,000 and the costs, to which the latter replied, two days later that his client (one of the Blums) had informed him that he had practically arranged whereby he was to defray the expenses of the appeal "and that he was then [after the decision] to take the title," and asked if there was any misunderstanding. The next day Davis answered that the offer to defray the expenses was not acceptable to his clients and renewed the offer to return the deposit. There the matter stood until April 29th, when notice was served by the defendants of a motion for leave to withdraw their answer, which was followed by complainant's notice of motion for leave to amend the bill. Both motions were granted at the same time, the complainant being permitted, generally, to file a supplemental bill. In the supplemental bill the complainant completely reverses its position *Page 567 
to recover the deposit, and, after recounting the allegations and prayers of the original bill, the answer thereto, and the replication, it alleges that it was true, as the defendants had set up in their answer to the original bill that the time for the performance of the contract had been extended until the coming down of the decision of the supreme court; that it had acquiesced in the mandamus suit, and that it had been agreed that the hearing of the cause should be delayed to await the decision, and that the complainant would take the title if the court ordered a permit; that the supreme court had since so ordered, that an appeal had been taken, and that complainant was ready and willing to perform in accordance with the terms of the contract, and it prays for a specific performance of the contract. The answer admits the state of the original pleadings, denies all the allegations (except the fact of the final judgment in themandamus suit), and points out that the complainant, in its replication to the answer to the original bill, had denied the waiver of time of performance, and had claimed that it was not bound to wait the judgment of the supreme court; that the complainant never, except by the supplemental bill, expressed its willingness to take title, or tendered performance; that defendants have tendered the deposit with interest and costs, and that it was refused, and concludes with a denial that the complainant is entitled to the relief prayed by the supplemental bill. The prior election of the complainant to treat the contract as at an end is not specifically pleaded as a defense, and attention to this is called in complainant's brief, but the face-about of both litigants appearing in the record, it may be considered under the denial of the complainant's right to relief. If necessary it may be formally set up; for the present it will be regarded as correctly pleaded.
A word as to the practice. Setting up a maintainable new and inconsistent cause of action is not allowable after issue. The course is to take a dismissal without prejudice and start anew.Coddington v. Mott, 14 N.J. Eq. 430. Here the defendants withdrew their answer; there was no issue when the amendment was allowed and made. *Page 568 
The complainant having by its original bill elected to be no longer bound by the contract is not privileged to again choose to be bound. Having committed itself to a recovery of the deposit, its right to have the property is forever gone. The election is irrevocable. Claron v. Thommessen, 96 N.J. Eq. 650; Heller v.Elliott, 44 N.J. Law 467. The commencement of an action, where all the facts are known, is conclusive evidence of an election.Conrow v. Little, 115 N.Y. 387. "A party," says Bigelow, "cannot, either in the course of litigation or in dealings inpais, occupy inconsistent positions. Upon that rule election is founded. A man shall not be allowed to approbate and reprobate. And where a man has an election between several inconsistent causes of action he will be confined to that which he first adopts. The election, if made with knowledge of the facts, is in itself binding. It cannot be withdrawn without due consent. It cannot be withdrawn though it has not been acted upon by another by any change of position." Big. Estop. (6th ed.) 732. A comprehensive statement of the effect of an election is given in20 Corp. Jur. 38, thus: "An election once made between co-existing remedial rights which are inconsistent is not only irrevocable and cannot be withdrawn without due consent even though it has not been acted upon by another to his detriment, but it is also conclusive and constitutes an absolute bar to any action, suit or proceedings based upon a remedial right inconsistent with that asserted by the election or to the maintenance of a defense founded on such inconsistent rights." Chancellor Kent, in Sanger v. Wood, 3 John. Ch. 416, put it in this way: "Any decisive act of the party, with knowledge of his rights, and of the fact, determines his election in the case of conflicting and inconsistent remedies." In Connihan v.Thompson, 111 Mass. 270, it is said that "the defense of waiver by election arises when the remedies are inconsistent, as where one action is founded on an affirmance and the other upon the disaffirmance of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the fact, determines the legal rights of the parties *Page 569 
once for all. The institution of a suit is such a decisive act, and if its maintenance necessarily involves an election to affirm or disaffirm a voidable contract or sale, or to rescind one, it is generally held to be a conclusive waiver of inconsistent rights, and thus to defeat any action subsequently brought thereon. In Thompson v. Howard, 31 Mich. 312, this language is used: "A man may not take two contradictory positions, and where he has a right to chose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one with knowledge or means of knowledge of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again." In Rodermund v.Clark, 46 N.Y. 354, the principle is stated in this manner: "Where there exists an election between inconsistent remedies the party is confined to the remedy which he first prefers and adopts. The remedies are not concurrent, and the choice between them being once made, the right to follow the other is forever gone." It is not helpful to multiply these citations, but for outstanding cases expressing the doctrine see Livingston v.Kane, 3 Johns. Ch. 224; Kennedy v. Thorp, 51 N.Y. 174; Acer
v. Hotchkiss, 97 N.Y. 395; Terry v. Munger, 121 N.Y. 161;Mills v. Parkhurst, 126 N.Y. 89; Washburn v. Insurance Co.,114 Mass. 175; Metcalf v. Williams, 144 Mass. 452; ElevatorCo. v. U.P. Ry. Co., 97 Iowa 719; Thompson v. Howard, supra;Farwell v. Myers, 59 Mich. 179. A collection of many of the cases is to be found in the note to Crossman v. UniversalRubber Co., 13 L.R.A. 91. The principle is so fundamental and universal of application that our court of errors and appeals in the Claron Case simply applied it without discussion.
It is the contention of the complainant that the subsequent conduct of the defendants, and the dealings of the parties, released it of its election, or, if not released, that the defendants are estopped from setting up the election. An election once made, being irrevocable, nothing short of a contract reviving the lost remedy will restore it. In Moller v. *Page 570 Tuska, 87 N.Y. 166, the plaintiffs brought an action in replevin to recover property procured by fraud in the sale. Afterwards the vendee was declared a bankrupt and the plaintiffs filed their claim with the assignee in bankruptcy and received a dividend which they later returned on demand and their claim was expunged. The filing of the claim and acceptance of the dividend was held by the court below as an affirmance of the contract, a second election, and a bar to the recovery of the property. In reversing the judgment of dismissal the court of errors and appeals, speaking through Judge Danforth, said: "The plaintiffs manifested their election by bringing this action. After that, the other way of redress was not open to them; for, according to Comyn (Dig. Elect. C. 2), if a man once determines his election it shall be determined forever. Hence, they could never successfully assert a claim against the purchaser under the contract, for the election to disaffirm it had been manifested, and to revoke it was not in their power," and "we are of opinion that by the election made to disaffirm the contract of sale and resume their property, the rights of the plaintiffs to maintain this action became fixed, and could only be extinguished by release or actual payment, or the making of a new engagement."
While a contract of release, or a counter estoppel, is not deemed available to the complainant, nevertheless the reasons upon which it seeks to avoid the effect of its election will be considered and disposed of.
It cannot be said that the answer to the suit for the deposit, that it was not due because the time of performance had been extended until the decision in the mandamus suit, waived the election. The answer amounted to a denial of liability at that time, and the allegations therein of an agreement to extend the time was expressly denied by the complainant in its replication and its right to recover the money was re-asserted. The replication constituted a renewal of the disaffirmance of the contract. Nor can the complainant's choice of remedy be considered as falling within the class of cases where relief is given because of mistake of fact or law, *Page 571 
for, if there was, in fact, an extension of the time of performance, as the defendants alleged and the complainant denied, and which denial the complainant by its supplemental bill retracts, and wherein it affirms the contract, the complainant cannot escape the indictment that it brought its suit in bad faith and that it made its election with full knowledge of the agreement to which it was a party, if it be true, as it now claims, that there was such an agreement.
The representation of the complainant's counsel at the time he sought an adjournment of the hearing in January, 1925, that his client intended to take the property if the mandamus suit resulted favorably to his client, was merely by way of inducement to a consent to the postponement of the trial of the issue then before the court. There was no retreat by the complainant, or withdrawal of its repudiation of the contract; it was simply a self-serving assurance that it would take if the outcome of the suit at law, and the taking, would be advantageous, but otherwise it would adhere to its disaffirmance.
The willingness and the offer of the defendants to perform the contract after the supreme court ordered a permit was purely voluntary, without consideration, unaccepted until after withdrawal, and unexecuted, and it was only after a sharp rise in the value of the property (nearly double the contract price) pricked the cupidity of the complainant that the supplemental bill was filed.
The complainant must be held to its election and the bill will be dismissed. *Page 572