This bill is by a vendor for the specific performance of a contract for the sale of land. The contract bears date August 28th, 1925, and provides that time was of the essence of the contract, and that the contract was to be perfected November 25th, 1925, "provided that the necessary title searches can be obtained from any first-class New Jersey title company by that date," and "should there, by any delay, not the fault of the buyer, in the procuring of such searches, the time for the final settlement shall extend until such searches can be obtained." Upon default by the vendee the down money, $850, could, at the option of the vendor, be applied on account of the purchase price or be forfeited as liquidated damages and not as a penalty. The title was to be free of all encumbrances except potential municipal liens, obvious easements and usual restrictions running with the land, and was to be marketable, and on failure the down money was to be returned. Instead of procuring searches the vendee sought a policy from a title company insuring the title, and the title company refused to issue one, although the title was clear and marketable, until it could be assured against certain possible hazards to which it took exception. The complainant, vendor, became impatient, and on December 14th, 1925, David Bobker, a Newark lawyer, and of the B. (Bobker) Holding Company, wrote to the defendant, vendee:
"You certainly have had sufficient length of time to close title. The mere fact that the contract provides that title is to pass as soon as you receive a report from the title company does not mean that the matter can drag on indefinitely and forever. You have had a reasonable length of time in which to close, and I am giving you notice that unless this matter is closed on or before December 21st, that I will consider contract canceled and make other arrangements."
And in answer the defendant wrote to Bobker, December 21st, 1925: *Page 426 
"Your letter relative to settling for property purchased under agreement with B. Holding Company acknowledged.
"I know of no way to expedite completion of searches for property. The congestion of the title companies is generally known, and particularly known to your Sea Isle agent, as we visited the title company together. I am as much embarrassed by delay as you, and will settle when searches are completed, and I hereby notify you that I stand upon my rights under the agreement."
To which Bobker replied under date of December 30th:
"I acknowledge receipt of your letter of the 21st instant and note contents.
"I had title searched to the same property and secured a report and an abstract in two weeks. This report and abstract are in my possession and I am willing to deliver the same to you for the purposes of expediting matters.
"I am again notifying you that I will extend time for closing this matter until Saturday, January 2d 1926, and failing to hear from you, I will consider that you have abandoned contract and I will refuse to consummamte after January 2d 1926."
On June 1st, 1926, Bobker again wrote the defendant:
"Your letter of the 26th received and contents noted. The title in connection with this matter has been passed upon by Charles Landis, an attorney located at Sea Isle City, who is familiar with practically every title throughout Sea Isle City, and whatever exceptions have been noted by the title company will be cleared up by him. If you will advise me what exceptions you refer to, I will take the matter up with Mr. Landis, and it is also my suggestion that you send a copy of your letter direct to Mr. Landis.
"The above communication is sent to you without prejudice, without waiving any of my client's legal rights, and my client advised Mr. DuBois months ago that we considered the contract as canceled, same having been entered into almost a year ago. My client felt that more than a reasonable length of time had elapsed in which the title company could have examined the title in question.
"Upon receipt of your communication I will advise you of my client's attitude. I presume that what you might do is to send me a copy of the title company's report."
The letter to which the last was in reply was not put in evidence. The possible pitfalls to which the title company took exception, which in no manner affected the title, were not smoothed out so that it could see its way clear to issue a policy without risk, and the defendant refused to take *Page 427 
title unless the exceptions were cleared up, and on July 19th, 1926, started suit in the supreme court to recover his down money, alleging that the complainant was unable to give a clear title. To this the latter joined issue and averred that it was ready and willing to perform at the time stipulated, or in reasonable time thereafter, but that the defendant refused; and further, that "the contract for sale provided `that time is the essence of this agreement,' and in view of this provision the requests on the part of the plaintiff, on or about the 18th day of May, 1926, to pass title, was not in accordance with the tenor and effect of the contract of sale. The defendant was therefore excused from performing its undertaking set forth in said agreement." The cause came to trial and resulted in a nonsuit because it was not shown that the title was not marketable,i.e., that the exceptions taken by the title company did not affect the title. On the heels of the nonsuit the complainant brought this suit September 18th, 1926. When the letters cancelling the contract were written the speculative boom in real estate along the Jersey coast was on, but by the time the nonsuit was granted it had collapsed, and that accounts for the face-about and the present effort of the complainant to shift the loss to the defendant. The complainant is not entitled to the relief of specific performance. It conditionally repudiated the contract by its letter of December 14th, 1925, and reaffirmed the repudiation in its second letter of December 30th, after which the condition came to pass, and it reserved its right to adhere to its determination to "cancel" the contract in its letter of June 1st, 1926. And now the complainant answers that its efforts at rescission were futile, because the defendant was not in default at the time, and it had no right to rescind. It cannot recant. But be that as it may, it later, in the suit at law, pleaded that it was excused from performing because of the defendant's dereliction. It there, if not before, elected to reprobate performance of the contract and to retain the down money as liquidated damages, and to that election it is bound.Claron v. Thommessen, 96 N.J. Eq. 650. The manifest intention of the complainant to be no longer bound to a *Page 428 
performance of the contract also precludes a recovery, on the principle that a suitor for specific performance must show himself to have been at all times ready, desirous, prompt and eager to perform the contract on his part. Midling v. Trefz,48 N.J. Eq. 638.
The bill will be dismissed.