Touching the merits of this case I am unable to escape the conviction that the reason and only reason defendant vendee failed to carry out the terms of his contract of purchase was his inability or disinclination to finance the purchase in a falling market.
By way of defense on the part of the vendee it is claimed that one Lipsitz was employed by complainant vendor to effect a sale of the property here in question and made false representations to Lipsitz touching the income of the business, which false representations were repeated by Lipsitz to defendant prior to the execution of the contract.
It must be recognized that an innocent principal cannot assert any rights or retain any benefits upon a contract when it is procured by the fraud of his agent. Reitman v. Fiorillo,76 N.J. Law 815; Kavky v. Harris (N.J.), 102 N.J. Law 371.
But I am fully convinced that the representations claimed to have been made were neither made by complainant to Lipsitz nor by Lipsitz to defendant, and I also doubt whether Lipsitz was, in fact, engaged by complainant to sell this property. Indeed, while the written contract of purchase is in the sole name of defendant as purchaser, there is strong ground for the belief that it was for the mutual benefit of him and Lipsitz; admittedly, Lipsitz became the owner of an interest in the contract but a few days after its execution. But be that as it may, it is impossible for me to believe that the representations claimed were in fact made either by complainant to Lipsitz or by the latter to defendant, and I do not believe that anyone who heard their testimony could have accepted it as true in that respect. But it is not alone the fact that their testimony did not bear the appearance of truth or the semblance of probability; it was established that without *Page 376 
protest or even suggestion of misrepresentations defendant and Lipsitz made at least one payment on the contract after they had learned that the income of the property was not in amount as they now claim it was represented, and also thereafter sought extension of time for its performance. In my judgment it is but another case of an honest contract of purchase made in an active market which was subsequently repudiated by reason of a falling market.
The evidence discloses than an action at law based on this contract was brought by complainant against defendant and dismissed prior to the present suit for specific performance. This is urged as a waiver, by election, of the remedy now sought.
There appears to be no dissent to the general doctrine that in order that the commencement of an action at law or a suit in equity, which is not prosecuted to judgment or decree and which results in no benefit to the prosecuting party or detriment to the defendant, shall have the effect to bar any other remedy the prosecuting party may have, the remedies must proceed from apposite and irreconcilable claims of right, and must be so opposite or inconsistent that a party cannot logically assume to follow one without renouncing the other. But in the application of this well recognized rule to actions at law and suits in equity growing out of contracts for the sale of land the courts of our several states are not in entire harmony. In an extended note to 26 A.L.R. 111, most of the authorities are collected. It will be observed that nearly all of the adjudications in specific performance cases have arisen in suits by vendees, and the uniform inquiry of the several courts has been to ascertain whether the prior discontinued suit should be said to be an affirmance or disaffirmance of the contract. An action by the vendee against his vendor to recover the payments he has made on account of his contract of purchase appears to have been almost uniformly regarded as a disaffirmance of the contract and an irrevocable repudiation of all obligations under it, and in consequence a bar to a subsequent suit for specific performance, even though the action has been discontinued and no *Page 377 
estoppel has arisen through benefit to the plaintiff or detriment to the defendant. But where the prior discontinued action by the vendee against his vendor has been for the recovery of damages for non-performance of his contract the preponderance of authority appears to be to the effect that such an action being based upon the contract is in affirmance of it and in consequence is not such a repudiation of the vendee's obligations under it as will be operative as a bar to a suit for specific performance in the absence of benefit to the plaintiff or detriment to defendant having arisen by the prior discontinued action for damages, but some courts have held the prior discontinued action for damages so far in disaffirmance of the contract as to be operative as a bar to a subsequent suit for performance, irrespective of any element of estoppel. In Herrington v. Hubbard, 2 Ill. 570,
the vendee brought an action of covenant under his contract to recover damages and also an action of assumpsit to recover back the part of the purchase-money paid, he then dismissed both actions and filed a bill for specific performance. The court held the action of assumpsit to recover back the purchase-money paid operative as a bar, but suggested that the action of covenant for damages might not be a bar because based upon the contract. In this state it has been authoritively determined that an action by a vendee against his vendor to recover back the deposit money is a disaffirmance of the contract and in consequence a repudiation of all obligation of the vendee under the agreement, and though discontinued is operative as a bar to a subsequent suit by the vendee for specific performance. Claron v. Thommessen, 96 N.J. Eq. 650; Maturi v. Fay, 98 N.J. Eq. 377. No adjudication in this state has been brought to my attention touching the operative effect of either a vendee's or vendor's action for damages. In B. Holding Co. v. Dubois, 100 N.J. Eq. 424, a vendor was denied specific performance because he had repudiated his obligation to convey both by letters and by a defense to an action by the vendee in which defense the vendor claimed he was excused from performing. *Page 378 
The action at law, which the vendee now claims as a bar to the present vendor's suit for specific performance, is not easily classified by any recognized nomenclature. The complainant alleged the execution of the contract on the day of its date and attached a copy and specifically made it a part of the complaint. The complaint then averred as follows: "Although plaintiffs have ever since and are still ready, willing and able to tender a good, legal and sufficient special warranty deed, the defendant has ever since and still refuses to perform the contract. Therefore the plaintiffs bring this action and demand as damages $53,000 together with interest and cost of suit." A clause of the attached contract provided for the final cash payment to be made "at the time of final settlement, which shall be at the office of `* * *' on or before April 1st, 1926, or the deposits of $5,000 made herewith at the option of the sellers, may be applied on account of the purchase price or be forfeited as liquidated damages to the sellers, and not as a penalty." It appears that $5,000 had been paid and the $53,000 named as damages was the unpaid part of the purchase price. A motion was made by the vendee-defendant in the supreme court to dismiss the complaint, and the following adjudication was there made:
"Motion to dismiss the complaint filed in the above-entitled cause having been made by Aaron Heine, Esquire, attorney for defendant, on the ground that said complaint does not allege a cause of action, in that penal damages are demanded by plaintiff where the contract stipulates liquidated damages; and no cause appearing to the contrary; it is on this 26th day of July, 1926, on motion of Aaron Heine, Esquire, attorney for defendant, ordered, that the complaint filed in the within cause be dismissed as it does not allege a cause of action, with costs to the defendant.
 FRANK S. KATZENBACH, JR., Justice of the Supreme Court.
I hereby consent to the filing of the above order. T. PHILLIPS BROWN, Attorney for Plaintiff." *Page 379 
It also appears that to the original complaint which was entitled in the supreme court there was attached a summons for defendant to appear in the supreme court; but that summons bore the signature of the county clerk and not that of the clerk of the supreme court which complaint and summons were served on defendant. While that does not appear to have been made the ground of the motion to dismiss, it discloses the anomalous situation of an action at law without a valid summons and with a complaint that set forth no cause of action. (It must be here assumed that the complaint set forth no cause of action since that was the specific determination of the law court and became the law of the case. Headly v. Leavitt, 65 N.J. Eq. 748;Gallagher v. L. B. Eagle Brewing Co., 86 N.J. Eq. 188. It would therefore seem that to invoke the doctrine of election of remedies in such circumstances something more than the anomalous proceeding referred to might well be required, and a search appropriately made touching the real attitude of the vendor. His testimony is that he wanted the sale enforced and so directed his solicitor and did not know that any other remedy had been sought by his solicitor. Although a litigant is ordinarily bound by the selection of remedies by his solicitor, yet in so far as the mental attitude and purpose of the vendor is concerned, it is reasonably apparent that his purpose throughout was to compel his vendee to perform the contract. And referring to the complaint it will be found that it specifically averred the past and present willingness and ability of the vendor to convey in accordance with the terms of the contract. Accordingly, the complaint which was filed in behalf of the vendor, in so far as it can be appropriately regarded as a pleading, was not only based upon the contract and sought the recovery of the unpaid part of the purchase price, but also tendered vendor's willingness to perform, and in that view cannot logically be said to have been in repudiation of it. I am also convinced that even though an action for damages brought by a vendor against his vendee for breach of his contract in failing to perform may be said to be a rescission or irrevocable repudiation *Page 380 
of the contract by the vendor and in consequence afford a bar to a subsequent vendor's suit for specific performance — which may well be doubted — yet, in the circumstances of the case as herein narrated the doctrine of election of remedies cannot be logically or reasonably enforced against complainant by defendant herein.
It also is urged by way of defense that the agreement is indefinite in that it provides a specific date for final payment and settlement, and then adds: "Provided that the necessary title searches can be obtained from any first-class New Jersey title company by that date. Should there be any delay, not the fault of the buyer, in the procuring of such searches, the time for settlement shall extend until searches can be obtained." It is not claimed that there was any inability to procure title searches or that this clause resulted in any misunderstanding or disagreement or in any way contributed to non-performance; the claim is that it renders the contract of sale unenforceable because of a possible necessity of extension of the time for performance to a date not definitely named. On the contrary the provision does definitely define a contingent extended period for performance terminating when the searches can be obtained. There is no rule requiring certainty as to time of performance which can be properly isolated from the equitable reasons on which it is based. I find no infirmity in a beneficial provision of that nature.
It is also urged by defendant that the agreement is indefinite in its failure to clearly define who is to execute the second mortgage which is to form a part of the purchase price. There reasonably can be no misunderstanding of that provision of the agreement; it must be read in the light of the ordinary conduct of reasonable men under the circumstances and clearly contemplates that the purchaser is to secure the amount named by the execution of the second mortgage there referred to, payable one year from the day of settlement.
It is further objected that the contract included personal property then on the premises without a specific enumeration of the chattels. The testimony of complainant is that on the day following the execution of the contract a suggestion *Page 381 
was made by defendant that the stockroom containing the personal property be locked up until settlement day, and that upon complainant explaining the impracticability of that course defendant agreed to permit sales to be made and stock replaced and accept complainant's accounts and make the necessary adjustments at settlement; accordingly, complainant thereupon caused a complete inventory of the personal property to be made. That inventory has been offered in evidence. The testimony for the defense does not radically differ from this except in one respect; defendant and Lipsitz say that that conversation occurred the day before the contract was signed, and add that complainant was to make the inventory and turn it over to defendant and was to make another inventory at settlement and an adjustment then was to be made for any deficiencies of stock on hand, and that no inventory has been handed to defendant.
I think this variance in the testimony of the parties immaterial. The contract was an entire contract for the sale of improved real estate and the chattels therein, and there appears to be no doubt of the power and duty of the court to enforce such a contract by decree of specific performance in behalf of either party to it, when that course appears to be equitable and just. Nor can it be deemed essential that an inventory of the chattels be annexed to the contract if the chattels referred to in the contract are ascertained with certainty. In the present case the accuracy of the inventory of the chattels which has been put in evidence cannot be reasonably doubted. Nor can it be doubted that the parties contemplated that the business should continue until the purchaser paid the balance of the purchase price and an allowance then made to him for any chattels that had been used and not replaced. Not only was that course in the interest of both parties, but both now agree that that course was to be pursued. But without any testimony of that agreement it is entirely clear that that course was pursued with the entire acquiescence of both parties. It is also entirely clear that neither any thought of uncertainty touching the chattels, which were in the premises at the time the contract was *Page 382 
made, nor any thought of uncertainty touching what chattels, if any, had been used and not replaced, in the slightest degree entered into the failure of defendant to perform. His failure to perform was because he wished to escape the burden of performance, and no equitable element can now be found in this afterthought as an excuse for non-performance. In such circumstances the proper practice is for a master to ascertain what chattels, if any, have been used and are not now replaced, and a just allowance made as originally contemplated. This is not a modification or reformation of the written contract; the acquiescence of both parties in that plan of operation and contemplated adjustment equitably binds them both to it.
Laches on the part of the complainant is claimed. From the time of performance until this time, complainant has, in my judgment, done everything in his power to induce defendant to perform his contract of purchase. Some time was consumed in negotiations of settlement and some delay arose from the abortive attempt of an attorney to sue at law and later bring this suit; but I find no unreasonable delay attributable to complainant and no delay prejudicial to defendant; the delay has been due to defendant's wrongfully seeking to escape his contractual liability.
A reference may be made to a master to ascertain what allowance, if any, should be made to defendant on account of any depletion of stock in trade. Upon the coming in of the master's report a decree of specific performance will be advised. *Page 383