In its monetary dimension this cause is not spectacular, yet in it counsel have found accommodations for some dialectics. *Page 77 
A concise narrative of the factual events will sufficiently exhibit the essence of the controversy.
The complainant offered to purchase from the defendants for the sum of $6,000 the tavern business with furniture and fixtures conducted at No. 299 Neilson Street, New Brunswick, New Jersey. Necessarily the complainant was thereby to acquire the retail liquor license by virtue of which the business was being pursued and a lease of the premises in which the enterprise was established. The defendants regarded the proposal with favor, but as owners of the real estate they were exceedingly apprehensive that the sale would enable the complainant later to transfer the liquor license to some other location and thus depreciate the market value of the premises. The complainant agreed that he would not do so, but to place him inescapably under such an interdiction occasioned some perplexity.
A tentative form of contract was prepared in writing by the broker. The parties thereupon consulted an experienced and capable attorney who, I am convinced by the preponderance of the evidence, exhaustively explained to the parties in English and in their native tongue all of the terms of the agreement. He recommended as an available expedient that the license be transferred to a corporation which could be promptly organized and that the defendants should hold a majority of the capital stock solely for the purpose of preventing a displacement of the liquor license. In no other respect was the defendants' possession of the stock to be operative or beneficial.
The contract evidencing such a mutual assent was executed on November 13th, 1945; a deposit of $500 was made by the complainant, and moreover on December 10th, 1945, the parties, viz., the complainant and defendants, subscribed to a certificate for the creation of the corporation. Thus the first stride was taken in pursuance of the agreement.
Shortly thereafter the complainant discussed the transaction with his uncle, who informed him that "a corporation is no good." The complainant notified the attorney and the defendants of his disinclination to consummate the bargain; he failed to appear at the time in January, 1946, designated *Page 78 
for the completion of the sale, and has since refused to abide by the terms of the contract.
However, on April 13th, 1946, an action was instituted on his behalf against the present defendants in the First Judicial District Court of the County of Middlesex, in which as plaintiffhe affirmed the contract in his state of demand, asserted hisreadiness and ability to perform, and sought the recovery ofcompensatory damages for the alleged breach of the compact by the defendants, waiving damages in excess of $500. On April 24th, 1946, the return date specified in the summons, the action was voluntarily discontinued.
The bill of complaint in this cause was filed on December 19th, 1946. In this tribunal the complainant with manifest contrariety to his former contention at law, ingeniously charges:
"7. Complainant shows that when he signed the said agreement, the same was not read to him and the true terms thereof were not disclosed or explained to complainant, that he is unfamiliar with written agreements or with the meaning thereof and complainant did not understand that the said written agreement was not by its terms any such agreement as he expected and intended it should be.
"8. Said written instrument, in fact, and contrary to the representations of the said Vincent Rottenbucher and Rose Rottenbucher and their agent and servant aforesaid, was and is unconscionable in its terms, was and is illegal and contrary to the laws of the State of New Jersey in its terms and conditions, did not and does not provide for the transfer of said plenary retail consumption liquor license to complainant, did not and does not provide for the transfer of the said tavern business to complainant, was and is conflicting in its terms and conditions and was and is impossible and incapable of performance according to its terms and conditions."
The complainant now prays that the agreement "be rescinded and declared void and of no effect," and that the defendants be obliged to return to him the deposit of $500.
Counsel for the complainant insists that in the respect in which the complainant rebelled (the retention of the liquor license in the name of a corporation), the contract was offensive *Page 79 
to the public policy of our state and oppugnant to our pertinent legislation. Counsel for the defendants controvert that contention and add that if the contract in that particular was illegal, the principle embodied in the old common law maxim, exturpi causa non oritur actio, inhibits the complainant from invoking the judicial aid of this court.
I am sufficiently persuaded that the complainant understood the sense and implied significance and acceptation of the agreement when he entered into it. He changed his mind too late. His right to do so had expired. He repudiated his obligations under the contract and lost his down-payment. Such is the basic decision of the cause.
However, I will allude to the other points debated. It is true that a subscription to corporate stock must in good faith be real, actual, and honest, as distinguished from fictitious, pretended, and deceptive. Jersey City Gas Co. v. Dwight,29 N.J. Eq. 242; Allfather v. Schlicher, 86 N.J. Eq. 1;97 Atl. Rep. 491. It is also categorical that those awarded licenses to dispense alcoholic beverages must possess their privileges free from any device which subjects the licenses to the control of other persons. R.S. 33:1-26; N.J.S.A. 33:1-26; Walsh v.Bradley, 121 N.J. Eq. 359; 190 Atl. Rep. 88; Lachow v. Alper,130 N.J. Eq. 588; 23 Atl. Rep. 2d 595; Mannion v.Greenbrook Hotel, Inc., 138 N.J. Eq. 518: 48 Atl. Rep. 2d888; Rawlins v. Trevethan, 139 N.J. Eq. 226; 50 Atl. Rep.
2d 852.
If the contract here implicated was essentially illegal (a point concerning which I need not express a decisive opinion), then the complainant does encounter the rule that our courts will not assist either party to enforce performance of, or to undo an illegal transaction. As a Circuit Court Judge I became concerned with the application of that principle of law in the decision ofAuditorium Kennel Club v. Atlantic City, 16 N.J. Mis. R. 354;199 Atl. Rep. 908. In commenting upon the authorities, I remarked: "The same rule has been observed and followed by our Court of Chancery. Cases may, of course, be found in which Chancery has acted but has done so to protect the public welfare and to prevent the impending mischief which would arise from the performance *Page 80 
of the illegal contract. In such cases equity has acted because the public interest required the relief. An acquaintance with our reported decisions on this subject discloses a continued adherence by our courts to the principle embodied in the common law maxim. The principle is to be recognized and regarded as a general rule of public policy. It is not difficult to discern in the decisions of our state a definite adoption of this policy and a disinclination to depart from it." "In some jurisdictions, courts have held, as a corollary to the general rule, that until the illegal purpose of the agreement has been executed, there is a locus poenitentiae during which either party may repent, disaffirm the agreement and recover back money or property which he has advanced under it. In those jurisdictions, although the policy is different, the underlying purpose of the courts is the same. The purpose is to protect society from the influence of contracts made in disregard of the public weal by interrupting the progress of illegal undertakings before the evil object has been consummated and thus reduce the number of such transactions. Our courts have deemed it to be more protective of the public interest to proclaim the outlawry of such undertakings from the first executed step to the last."
Chief-Justice Gummere in Prindiville v. Johnson Higgins,93 N.J. Eq. 425; 116 Atl. Rep. 785, stated: "The courts of this state have steadfastly refused to lend their aid to a wrong-doer either by the enforcement of an illegal contract or by relieving the wrong-doer from the obligations thereof; and this they do, not out of regard for the defendant in the action, but because of their unwillingness to use the powers which were granted to them for the furtherance of lawful ends in aiding schemes which are in their nature venal, or for the purpose of relieving parties from the liabilities which such schemes create." See, particularly, in their application to the present cause, Allfather v.Schlicher, supra; Loomis v. Public Service Transportation Co.,102 N.J. Eq. 259; 140 Atl. Rep. 398; Nickolopoulos v. Sarantis,102 N.J. Eq. 585; 141 Atl. Rep. 792; Jourdan v. Burstow,76 N.J. Eq. 55; 74 Atl. Rep. 124; affirmed, 78 N.J. Eq. 587;81 Atl. Rep. 1133; Ryan v. Motor Credit Co., 130 *Page 81 N.J. Eq. 531; 23 Atl. Rep. 2d 607; affirmed, 132 N.J. Eq. 398; 28 Atl. Rep. 2d 181.
The tactics resorted to by the complainant invite some exposition. In the law court, the complainant alleged the contract to be valid. Here he asserts it is invalid and contrary to public policy. There he declared his readiness to perform and based his grievance upon the breach of the contract by the defendants. Here he acknowledges that it was he who declined to perform the contract. At law, he sought compensatory damages. Here he requests a rescission of the contract and the recovery of his initial monetary deposit.
The distinction between those contentions would seem to be one of a contradictory and incongruous difference. Courts are not halls in which litigants in seeking redress in the same controversy can approbate in one forum and reprobate in another. To prevent such contortions the doctrine of election of remedies evolved.
It will not be inappropriate in the disposition of this case to call attention to the general principle that where there exists an election between inconsistent remedies, such for example as the choice between affirming or disaffirming and rescinding a contract, the party, in the absence of transcending equities, is confined to the remedy which he first prefers and adopts. The institution of a suit is usually regarded as a decisive act which is generally held to be a conclusive waiver of inconsistent, contradictory, and inimical modes of redress, even though the election has not been acted upon by another to his detriment. The principle supports the reasonable, entirely just, and pragmatical regulation that a party, in search of legal redress, shall not be at liberty to assume irreconcilable and repugnant positions.
The following cases are informative of the doctrine, its observance, and its qualifications: Claron v. Thommessen,96 N.J. Eq. 650; 126 Atl. Rep. 308; Maturi v. Fay, 98 N.J. Eq. 377; 129 Atl. Rep. 185; Rose v. Buckley, 98 N.J. Eq. 685;130 Atl. Rep. 527; Blum Building Co. v. Ingersoll, 99 N.J. Eq. 563;134 Atl. Rep. 176; affirmed, 101 N.J. Eq. 291;137 Atl. Rep. 916; Van Buren v. Fine, 101 N.J. Eq. 373; 139 Atl. Rep. 486;
affirmed, 103 N.J. Eq. 327; 143 *Page 82 Atl. Rep. 921; Levy v. Massachusetts Accident Co., 124 N.J. Eq. 420; 2 Atl. Rep. 2d 341; affirmed, 127 N.J. Eq. 49;11 Atl. Rep. 2d 79; Nazzaro v. Globe and RepublicInsurance Co., 127 N.J. Eq. 279; 12 Atl. Rep. 2d 697;Kertesz v. Feldheim, 6 N.J. Mis. R. 10; 139 Atl. Rep. 704;Heller v. Elliott, 44 N.J. Law 467; affirmed,45 N.J. Law 564; Adams v. Camden Safe Deposit and Trust Co.,121 N.J. Law 389; 2 Atl. Rep. 2d 361.
Moreover I notice that the present suit was not instituted until December 19th, 1946. A party having cause to rescind a contract must act promptly. Norfolk and New Brunswick HosieryCo. v. Arnold, 49 N.J. Eq. 390; 23 Atl. Rep. 514; Reed v.Benzine-ated Soap Co., 81 N.J. Eq. 182; 86 Atl. Rep. 263.
A decree dismissing the bill will be advised.