59 N.J. Super. 142 (1959)
157 A.2d 355
FRANK G. THOMAS, PLAINTIFF,
v.
CAMDEN TRUST COMPANY, A BANKING CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 18, 1959.
*145 Messrs. Kisselman, Devine and Deighan (Mr. Neil F. Deighan, Jr., appearing) attorneys for plaintiff.
Messrs. Archer, Greiner, Hunter & Read (Mr. John P. Hauch appearing) attorneys for defendant.
DZICK, J.C.C. (temporarily assigned).
This case comes before the court on the defendant's motion for (1) an order dismissing the action because the complaint fails to state a claim against the defendant upon which relief can be granted for the reason that the six-year statute of limitations is a bar to this action, R.R. 4:12-3; or (2) in the alternative for a summary judgment for the defendant on the ground that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law based on the fact that the plaintiff is estopped from pursuing this action since he has brought suit as to this same subject matter in the Chancery Division of Gloucester County, R.R. 4:58-3.
The plaintiff's complaint is in three counts, the first two counts are in tort for conversion and the third count is for the breach of a vested contractual right in the plaintiff which the defendant violated. The suit involves the cashing of seven United States Savings Bonds, Series "E," in the joint names of the plaintiff and Annie V. Thomas, with the right of survivorship. The bonds were allegedly cashed by the *146 defendant on various dates between December 22, 1952 and June 15, 1953. The suit against this defendant was instituted on August 6, 1959.
The plaintiff in his complaint alleges that he is the son of Annie V. Thomas, who, during her lifetime, purchased United States Savings Bonds, Series "E," in the joint names of Annie V. Thomas or Frank G. Thomas, with right of survivorship endorsed thereon. It is alleged that the payments were made on the bonds on the purported signature of Annie V. Thomas, but that payments were actually made to a third person and not to the plaintiff or Annie V. Thomas and that to whomever the payments were made they were not authorized to receive them. The plaintiff claims that during the life of Annie V. Thomas she was either physically incapable of appearing personally or was physically confined to a mental institution at the time that said bonds were cashed. Because of her physical inability to be present and because of her mental inability she could not appear before an officer of the defendant and establish her identity and did not in the presence of an officer of the defendant sign a request for payment as required by the United States department regulations on the reverse side of said bond. The said Annie V. Thomas was in the New Jersey State Hospital at Trenton, New Jersey, as a mental incompetent on December 30, 1952 and remained there until her death on April 22, 1957.
Following the death of said Annie V. Thomas this plaintiff instituted a suit against his brother, Albert C. Thomas, in the Chancery Division of Gloucester County, which complaint was filed on July 31, 1957, for an accounting. The plaintiff filed an affidavit in this cause wherein he states that he had no knowledge or information as to the conversion of the bonds in question until some time after the filing of an account by Albert C. Thomas in the estate of his mother.
The plaintiff does not deny that in the chancery matter (in item 6 of the pretrial order) he was granted leave to *147 amend the pleadings and to aver that the defendant Albert C. Thomas had wrongfully converted seven bonds issued in the name of the decedent and the plaintiff; and further, that the defendant, Albert C. Thomas, also wrongfully withholds five additional United States savings bonds belonging to the plaintiff; and that these amended pleadings are to be served on other parties who were given leave to answer within 20 days thereafter. The plaintiff admits that such leave was granted to him and that he intends to file the necessary amendments but as yet has not done so.
On June 11, 1958 the attorney for the plaintiff sent a letter to Camden Trust Company making a formal demand against the defendant for the amount of the bonds that were cashed, and on June 12, 1958 the attorney for the plaintiff received from the defendant an acknowledgment of said letter.
Among the reforms introduced by the judicial article of the 1947 Constitution and the implementing Rules of Court is the fusion of the powers of law and chancery in one Superior Court functioning within a simple and flexible procedural framework designed and purposed for the just and expeditious determination in a single action of all the ultimate merits of an entire controversy between litigants. The policy of our practice contemplates that the Superior Court litigant not only should initially plead any legal and equitable claim or defenses, whether or not consistent, supporting his position in the controversy and seek all legal and equitable remedies which he may desire, but also, with the aid of the broad discovery and pretrial procedures by which he may obtain all the facts material to the position of both sides, that he should avail himself of the liberality allowed to form and reform his pleadings and the pretrial order accordingly, the opportunities for such amendment being restricted, in any substantial degree, only by R.R. 4:29-1 and 4:15-2 applicable to amendments offered after the entry of the pretrial order, or during trial. Ajamian v. Schlanger, 14 N.J. 483, 485 (1954).
*148 The present motion involves a question concerning the alternative and inconsistent rights and remedies available to one whose property has allegedly been converted to seek recourse against those who might be responsible for said conversion. The plaintiff admits that he instituted a suit in Chancery for an accounting in the estate of his late mother. The suit in Chancery and this particular suit are two distinct and separate matters. The Chancery suit is for an accounting supported by the fact that the plaintiff is a beneficiary of the decedent's estate. In the Chancery matter there may be many different issues raised. There may be exceptions taken to the accounting and other matters may arise which would not be a part of the law suit.
Under our present practice alternative or inconsistent remedies are permitted. "Now that the victim may have recourse to the Superior Court empowered to grant him the remedy he prefers under a practice allowing him, barring special equities favoring his adversary, freedom to shift his ground to seek the legal remedy alternatively or in substitution for rescision, he cannot be deemed conclusively to have waived the legal remedy without far more evidence than the mere filing of the complaint. It must appear, as it does in the instant case, that the victim, although knowing or being made aware of the risk, lets pass the opportunities afforded by the new practice for a shift of ground and remain steadfast in its pursuit of the equitable remedy. Young v. George C. Fuller Contracting Co., Inc., 12 N.J. Super. 554 (Law Div. 1951); * * *. Indeed, unless equities in favor of other parties intervene, his final choice of remedy under appropriate pleadings and pretrial order may await the close of the proofs of the trial. * * *." Ajamian v. Schlanger, supra, 14 N.J. 483, at pages 489-490.
There has been nothing shown to the court wherein the defendant has relied upon any course of conduct of the plaintiff or has been prejudiced by any course of conduct of the plaintiff in filing the Chancery suit and in being granted leave to file a claim for conversion against the *149 plaintiff's brother in the Chancery suit. The court cannot see where the actions are inconsistent. The doctrine of election of remedies is not in the strict sense a jurisdictional question since it is the plaintiff who has the right to elect which of two inconsistent rights he intends to exercise. The court cannot deny the right to elect which court a litigant will choose, and where he makes an election the court has no right to change the cause of action to the other inconsistent remedy since the court has jurisdiction over both rights of actions or remedies. 20 C.J. Election of Remedies, sec. 4, p. 4; 28 C.J.S. Election of Remedies, § 2, pp. 1060-1061. The doctrine of election of remedies is generally grounded in the principles of waiver or estoppel. Blum Building Co. v. Ingersoll, 99 N.J. Eq. 563 (Ch. 1926). Lizak v. Rottenbucher, 140 N.J. Eq. 76, 81 (Ch. 1947). But under the new rules the mere filing of a complaint is not the decisive act and it is to be noted in this case that even though the plaintiff has had a right to amend the Chancery proceeding that has as yet not been done. Under the present rules the Superior Court is empowered to grant the plaintiff the remedy he prefers under a practice allowing him, by special equities favoring his adversary, freedom to shift his ground to seek alternative legal remedies, and he is not deemed to have waived his right by merely filing the complaint. In certain situations he may await the close of the proofs at the trial to make his election. Republic of China v. Pong-Tsu Mow, 15 N.J. 139, 145, 146 (1954).
The cases cited by the defendant are clearly distinguishable and do not sustain its position with relation to the six-year statute of limitations. In the case of Weiss v. Stelling, 130 N.J.L. 235 (E. & A. 1943) the plaintiffs did not plead that the distress proceedings were illegal or fraudulent. And as the court pointed out assuming that there was a fraudulent conspiracy subsequent to the lawful distress, that would not taint the lawful distress proceedings *150 since there was no assertion that the distress proceedings were anything but lawful.
The court is fully in accord with the case of Weinstein v. Blanchard, 109 N.J.L. 332 (E. & A. 1932), as this was a malpractice case as well as a contract claim against a doctor for unskilled services. Normally in malpractice cases the statute runs from the act itself unless there is fraud in concealing the act.
In the case of Employers Liability Assurance Corp. v. Haidt, 6 N.J. 471 (1951) the liability of the defendant arose in August 1939 and yet the plaintiff and its subrogor litigated other matters but did not proceed against the defendant for almost a period of ten years. In this case they had knowledge almost immediately or within a very short time after the trustee fraudulently signed the referee's name to checks. And since they sat back and did nothing the statute ran. The court finds nothing in that case that is helpful to the defendant in this situation.
Since legal and equitable claims or defenses may now be determined as a result of the fusion of powers of the law and chancery courts in one Superior Court under equitable principles the defendant should be estopped from asserting the defense of the statute of limitations. "Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practicable effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." 3 Pomeroy on Equity Jurisprudence (5th ed. 1941), Sec. 802, p. 180. State v. United States Steel Corp., 22 N.J. 341, 358 (1956).
*151 Vice Chancellor Leaming in the case of Howard v. West Jersey and S.S.R. Co., 102 N.J. Eq. 517, 520-521 (Ch. 1928), at a much earlier date expressed practically the same thought when he said:
"It must be recognized that the statute of limitations is for the benefit of individuals, and not to secure general objects of policy; hence it may be waived by express contract or by necessary implication, or its benefits may be lost by conduct invoking the established principles of estoppel in pais. Freeman v. Conover, 95 N.J.L. 89. Also it should be noted that while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. * * *"
It would seem that the period of limitation in cases such as the one before us should run only from the discovery of a fraud by the injured person. The case that is perhaps more on all fours with the case at bar is Teas v. Third National Bank & Trust Co., 125 N.J. Eq. 224, 228-229 (E. & A. 1939).
"Coming now to the defense of the statute of limitations set up in the answer to the suit at law and enjoined by the Court of Chancery, it would, under the facts of this case, be most inequitable to allow the bank to take advantage of its own wrongdoing by setting up this defense. The bank was derelict in its duty to the respondent in permitting the conversion of these funds by Carr. It should have made inquiry as to his right to endorse and place the proceeds of the checks in his own account to his own credit. The bank by reason of the form of the checks was put upon notice that Carr had no power to do what he did. Its failure to inquire was a breach of duty owing to respondent and for which it is liable to him. Passaic-Bergen Lumber Co. v. United States Trust Co., supra [110 N.J.L. 315 (E. & A. 1933)].
*152 Its action constituted equitable fraud and it is now estopped from interposing the defense of the statute and equity will properly enjoin such defense. Howard v. West Jersey and S.S.R. Co., 102 N.J. Eq. 517 * * *.
The appellant argues for reversal that the respondent must make it appear clearly before he can obtain equitable relief that he was prevented, by the act of the defendant, from bringing his suit at law until his right of action was barred by the statute. That is a correct statement of the law. Lamb v. Martin, 43 N.J. Eq. 34; Russell v. Hanan, 119 N.J. Eq. 99.
We conclude, however, as above pointed out, that the respondent was prevented from bringing his suit by the bank's failure to give him notice of the transaction. Its action in keeping him in ignorance is clearly a wrongful act on its part. Whether its act may be said to have been active wrongdoing or merely an act of negligence on the part of an employee, for which it is responsible, makes no difference in principle. The money which belonged to respondent was withheld from him by a wrongful act on the part of the bank and there was no negligence shown on his part after he made discovery of the manner in which it had made possible his loss. He was clearly prevented from bringing his action by the act of the bank and the facts so show."
On the reverse side of the bonds clear instructions are set forth as to how the right to payment for the bond is established. The defendant did not comply with the instructions as set forth on the back of the bond. The plaintiff had a right to rely upon and to expect that the bank would comply with them. As in the Teas case, whether we say the bank was guilty of acts of wrongdoing or merely responsible for a negligent act of one of its employees makes no difference. The bank had notice as to how the bonds were to be cashed and the failure of the bank to cash the bonds in accordance with the rules and regulations annexed on the back of the bonds was a failure or a breach of a duty which it owed to the plaintiff. The defendant was under a duty to make sure whoever cashed the bonds was one of the parties named on the face of the bond. The plaintiff had a right to rely upon the representation that the bonds would only be cashed in accordance with the instructions typed on the back of the bonds. It would be most inequitable to permit the bank, as the result of its actions, to come forward now and assert *153 the defense of the statute of limitations. The plaintiff made a timely demand upon the defendant for the monies within the statutory period, after he made discovery that the bonds had been cashed.
It may very well be that the defendant bank may be jointly liable as a tort-feasor with the plaintiff's brother. However, the plaintiff has seen fit to sue only the defendant. This does not preclude the defendant, however, from bringing in a third party who may be held jointly responsible with it.
The motion to dismiss, or in the alternative for summary judgment, for the reasons hereinabove stated is hereby denied.