This is a suit to compel the defendant to repurchase certain shares of its own capital stock now owned by complainant.
In the spring of 1927, defendant decided to endeavor to persuade its employes to become stockholders. Mr. Crowell, then president of defendant, told the plan to Mr. Iback, complainant's husband and defendant's works manager. Iback consulted his wife, the complainant, and they decided to purchase twenty shares jointly and so notified the company's *Page 91 
assistant secretary, and in due course they paid the company par, $2,000 for the stock. Some time after complainant and her husband had notified the company of their decision to take twenty shares, Crowell told Iback that he would give to each employe a letter promising that in case of the employe's death or his leaving the company, the company would buy back his stock. On June 17, there was delivered to Iback a certificate running to him and his wife for twenty shares of stock, and with it a letter addressed to him, signed by Crowell as president and reading as follows:
"I wish to congratulate you upon becoming a stockholder in the Elevator Supplies Company, Inc. If, in the future, you or anyone in your family, should desire to sell the stock herewith conveyed to you, please be assured that the company will immediately pay par for the same. In return for this guaranty the company will expect such stock to be offered to the company instead of selling to anyone else in case it be desired to dispose of the same."
The following December, Iback informed Crowell that he and his wife wanted ten more shares of the company's stock and they were issued accordingly upon payment of $1,000 and with them was given to Iback a letter of the same tenor as the one already quoted.
Iback has assigned to complainant all his interest in the thirty shares of stock. Complainant requests defendant to buy back the stock at par and this the company refuses to do.
Complainant seeks relief first on the theory of specific performance. But she cannot succeed on this basis, since Crowell had no authority from defendant company to promise to buy back the stock. The management of corporate affairs is committed by statute to the board of directors. The president of a company, as its chief executive officer, may, without special authority, perform all acts of an ordinary nature which, by usage or necessity, are incident to his office and may bind the corporation in the usual course of its business. Beyond this, the president has no more control over the corporate property and funds than any other director. Stokes v. N.J. Pottery Co.,46 N.J. Law 237; Mausert *Page 92 
v. Christian Feigenspan, 68 N.J. Eq. 671; Murphy v. W.H. andF.W. Cane, Inc., 82 N.J. Law 557; Myrtle Avenue Corp. v. Mt.Prospect B. L. Assn., 112 N.J. Law 60; Knopf v. Alma Park,Inc., 105 N.J. Eq. 299; 107 N.J. Eq. 140.
Crowell had no authority, express or implied, to bind his company to repurchase complainant's stock.
Complainant further relies on an alleged ratification. At the annual meeting of the stockholders April 3d 1928, it was resolved "that all the acts and proceedings of all officers and directors of this corporation since the annual meeting of the stockholders held April 5th, 1927, be and the same are hereby ratified and approved." But the contract in question was not disclosed at the meeting when the resolution was adopted, or otherwise made known to the stockholders. Of course, Crowell himself had knowledge of the promise to buy back the stock but it has not been shown that any other stockholder had notice of it; and there is affirmative proof of the ignorance of some. There cannot be ratification without knowledge. Lister AgriculturalChemical Works v. Selby, 68 N.J. Eq. 271; General InvestmentCo. v. American Hide and Leather Co., 97 N.J. Eq. 230; Hyams
v. Old Dominion Co. (Me.), 93 Atl. Rep. 747; L.R.A. 1915 D.1128. The alleged ratification was ineffective to supply Crowell's lack of authority.
The contract to purchase back the stock is not the contract of the company and therefore complainant cannot succeed on the theory of specific performance.
Another consideration leads to the same result. The entire surplus of the defendant company was exhausted in 1932 and since then there has been a rising deficit so that now the capital is impaired to the extent of about $1,000,000, although the company is still solvent.
A corporation which has a surplus may, by authority of its board of directors, if its charter so permits, invest a part of the surplus in its own capital stock. But if the corporation has no surplus, then the purchase of its own stock works a reduction of the capital and such reduction *Page 93 
may be made only by two-thirds vote of the stockholders and in the manner prescribed by statute. Furthermore, each stockholder must be given opportunity, on such a reduction of capital, to sell to the company a proportionate part of his own holdings.General Investment Co. v. American Hide and Leather Co.,98 N.J. Eq. 326. It is sometimes said that "the laws in force at the time and place of the making of a contract and which affect its validity, performance and enforcement enter into and form a part of it as if they were expressly referred to or incorporated in its terms." Northern Pacific Railway Co. v. Wall,241 U.S. 87; 36 S.C. 493. See criticism of rule in 2 Williston onContracts, § 615. An agreement, such as the one now before the court which has not been authorized or approved by the stockholders and which gives to a stockholder an option to sell his stock to the company without limitation as to time, should be so construed that the option may be exercised only so long as the corporation has surplus funds.
Complainant also seeks rescission on the ground of fraud. It is clear that when the stock was issued to the Ibacks, the company had no intention of repurchasing it and therefore Crowell's representation that the company would repurchase was fraudulent. It matters not that Crowell overstepped his authority; a principal is not permitted to retain the benefits secured by his agent's fraud and yet to deny responsibility for the fraud. VanBuren v. Fine, 101 N.J. Eq. 373; 103 N.J. Eq. 327; Chapin v.Kreps, 106 N.J. Law 424. But the representation in question was not the effective means of inducing the Ibacks to buy the stock. They considered the stock a good investment and elected to purchase twenty shares before the representation was made. Likewise, when later they purchased ten more shares. In this vital respect, the present case is distinguishable from Downs
v. Jersey Central Power and Light Co., 115 N.J. Eq. 348;117 N.J. Eq. 138. Fraudulent representation does not justify rescission of a contract, unless it was influential in producing the contract. Wise v. Fuller, 29 N.J. Eq. 257.
The bill will be dismissed. *Page 94