The amended bill of complaint in this cause seeks to foreclose a mortgage of $75,000, executed by defendant Blackwood Theatre Company, a New Jersey corporation (hereinafter called Theatre Company) to complainant, First National Bank and Trust Company of Blackwood, New Jersey (hereinafter called the Bank), dated December 1st, 1927, and recorded on February 18th, 1928, in the office of the register of deeds of Camden county; the mortgage secures an issue of first mortgage coupon bonds aggregating $75,000, twenty-five of which bonds are for $1,000 each and one hundred for $500 each. The Bank is trustee under the mortgage, and executed its acceptance of the trust before the recording of the mortgage. The bill of complaint was filed on January 30th, 1932; after answer filed, the cause came on for final hearing in November, 1932; after hearing certain proofs, and by consent of the parties interested, an order was made permitting the filing of an amended bill of complaint, setting out such facts as it was then found necessary for the proper determination of the issues involved. By the amended bill of complaint additional parties were brought in, and the cause came on again for final hearing, which hearing occupied five days in January, 1934. Afterwards a petition was filed by Ashburn A. Lawson, claiming to own first mortgage bonds in the sum of $20,000, Joseph Sorg, trustee, claiming to own bonds in the sum of $40,000, Pitman Title and Trust Company, claiming to own bonds in the sum of $13,000, and the Blackwood Theatre Company, claiming to own bonds in the sum of $2,000, said petitioners claiming to own in the aggregate the whole amount of the said bond issue, and praying that Ashburn A. Lawson, Joseph Sorg, trustee, and Pitman Title and Trust Company be admitted as parties defendant, and that they, together with the defendant Theatre Company, have leave to file a counter-claim. After a hearing on this petition *Page 163 
an order was made admitting Ashburn A. Lawson, Joseph Sorg, trustee, and Pitman Title and Trust Company, as parties defendant, with leave to answer the bill, and together with the Theatre Company, file a counter-claim.
Prior to the admission of these new parties an order had been made in the cause permitting additional proofs to be taken in accordance with a petition filed respecting the examination of complainant's minute book by an expert on questioned writings and documents, which additional proofs, together with proofs concerning the additional matters presented by the answer and counter-claim filed by the intervening defendants, were taken on January 10th, 1935, and concluded February 13th, 1935.
By the amended bill, the Bank is complainant as trustee and individually, and it is alleged that the whole issue of said bonds was pledged by the Theatre Company to the bank as collateral for the payment of a note for $20,000, dated July 12th, 1927, made by the Theatre Company to the Bank. The answer of the Theatre Company denies that it ever pledged the said issue of bonds as collateral for the note, and says that the bonds were merely delivered to the Bank as trustee for certification under the terms of the mortgage and by virtue of resolutions passed by the board of directors of the Theatre Company; in the counter-claim the Theatre Company prays that the said bonds be ordered delivered by the Bank, as trustee, to the Theatre Company so that they may in turn deliver them to the beneficial owners thereof.
The essential issue to be determined is whether the Bank is entitled to hold these bonds as collateral for the payment of its note of $20,000, dated July 12th, 1927, or whether it is merely holding them as trustee to be delivered in accordance with an agreement between the Bank as trustee and the Theatre Company.
The mortgage provides that in case of default in payment of interest and taxes, foreclosure proceedings may be instituted by the trustee upon the written request of the holders of one-half in amount of the bonds outstanding and unpaid. No request was made upon the Bank, as trustee, to proceed upon the mortgage except by the Bank acting in its capacity *Page 164 
as creditor, claiming the entire issue of bonds as collateral for the payment of its note of $20,000.
The Theatre Company conducted in Blackwood a moving picture theatre and undertook during the early part of 1927 the reconstruction and refurnishing of the theatre, originally estimated to cost approximately $40,000 to $45,000, but actually when completed costing nearly $75,000. During the construction period, the Theatre Company negotiated loans with various banks other than the complainant, which loans were still unpaid at the time the mortgage in question was executed.
The officers of the Theatre Company were William N. Murphy, president; Louis C. Joyce, Jr., secretary, and Horace G.A. Smith, treasurer, who also constituted the board of directors of the Theatre Company. Messrs. Murphy and Joyce were also members of the board of directors of the Bank.
For the purpose of financing the rebuilding program, the officers of the Theatre Company were authorized to borrow $12,500 from Pitman Title and Trust Company and $10,000 from the Blackwood Trust Company, which amounts were so borrowed on notes of the company; afterwards, on July 12th, 1927, the sum of $20,000 was borrowed by the Theatre Company from the Bank, complainant in this cause, upon the promissory note signed by Blackwood Theatre Company, by Horace G.A. Smith, treasurer, payable on demand to the order of "ourselves" (Blackwood Theatre Company), endorsed by William N. Murphy, Louis C. Joyce, Jr., Horace G.A. Smith, and then by the Blackwood Theatre Company. The endorsements on the note show that interest on same was paid to March 31st, 1930, and that judgment on the same was entered in the New Jersey supreme court on April 10th, 1934. Nothing in the note refers to any collateral; the note is a plain promissory note, in the usual form. At a directors' meeting of the Theatre Company held June 7th, 1927, a motion was passed authorizing the officers to borrow $20,000 from the First National Bank of Blackwood in sufficient time to make payments on purchases subject to cash discounts; there was no action taken by the board of directors of the Theatre Company at that meeting or at any other meeting so *Page 165 
far as the minutes disclose, authorizing the giving of any collateral for the payment of this note to the Bank.
At the meeting of the board of directors of the Bank held July 12th, 1927, the date of the note in question, the following minutes appears:
"Mr. Joyce made application for loan of $20,000 for Blackwood Theatre Company, endorsed by Joyce, Murphy and Smith, to be secured by the mortgage bonds of the theatre when building completed and after the bonds were sold the money received to apply on account of loan.
"Upon presentation:
"Blackwood Theatre Company end. Joyce, Murphy and Smith ....... $20,000.00."
Nowhere in the minutes of the Theatre Company nor in the testimony can I find any authority given to Mr. Joyce, the secretary of the company, to pledge the entire issue of $75,000 of bonds, nor any part thereof, as collateral for the payment of this note.
At the meeting of the board of directors of the Theatre Company on June 7th, 1927, it was agreed to arrange, if possible, a blanket mortgage covering the theatre property, in the amount of $50,000, with an acceptable bank or trust company to be named as trustee-mortgagee, securing bonds to be issued for the purpose of local sale, the proceeds from the sale of the bonds to be applied to liquidation of temporary loans at banks and the reimbursement of Messrs. Murphy and Joyce for advances made.
No further reference in the minutes of the Theatre Company is made to the note held by the Bank except in the minutes of the board of directors of the Theatre Company of a meeting held November 12th, 1927, in which the treasurer reported that the proposed bond issue of $50,000 would not be sufficient to refund the indebtedness incurred in the reconstruction and refurnishing of the theatre, there being due to banks $42,500, to Shaner (the contractor) $15,000, to Joyce over $10,000, and to Murphy over $3,000, a total in excess of $70,000, plus bond issue and miscellaneous expenses. The money due the banks referred to in that minute consisted of three notes given by the Theatre Company, one to Pitman *Page 166 
Title and Trust Company for $12,500, Blackwood Trust Company for $10,000, and Blackwood Bank, complainant, for $20,000, the latter note being junior to the other notes.
At the meeting of the directors of the Theatre Company on November 12th, 1927, the secretary was authorized to employ Oscar B. Redrow, Esq., for the purpose of preparing official resolutions, c., bond and mortgage, and to secure the consent of First National Bank of Blackwood (complainant herein) to act as trustee for the bondholders.
At subsequent meetings of the stockholders and of the board of directors of the Theatre Company held November 29th, 1927, resolutions were passed authorizing the making of the mortgage in the sum of $75,000 to the Bank as trustee, and the issuance of bonds in the aggregate amount of $75,000. The resolution of the board of directors of the Theatre Company, a copy of which is set forth in the mortgage, provided that upon the execution of said bonds by the officers of the Theatre Company, they should forthwith be delivered to the said trustee (the Bank) who should endorse or authenticate the same to the total amount thereof and forthwith deliver the same to the treasurer of the Theatre Company when and as directed by the Theatre Company to be disposed of for the purposes of the Theatre Company. The form of bond and trustee's certificate was also set forth, and the mortgage contained the covenants and conditions usual in such a mortgage.
Mr. Pratt, the cashier of the Bank, testified that the mortgage and bonds were turned over to him about April or March, 1928, and that they were certified by the bank in 1930 or 1931, and were never delivered to the Theatre Company, but remained in the possession of the Bank.
After the execution of the trust mortgage, and before it had been placed on record, the Theatre Company executed a bond and mortgage to George W. Shaner and Sons in the sum of $15,000, representing the balance due Shaner on his contract for rebuilding the theatre. This mortgage was paid and canceled of record on May 28th, 1929. Some time after the cancellation of the Shaner mortgage, making the mortgage in question a first mortgage, demand was made by the Theatre Company that the bonds in question be authenticated and *Page 167 
delivered to them in accordance with the terms of the resolution under which the Bank had become trustee. In the meantime the Theatre Company had sold bonds in the aggregate amount of $20,000 to Ashburn A. Lawson for whom Louis C. Joyce, Jr., acted as trustee, which money had been paid into the treasury of the Theatre Company. The moneys received from the sale of bonds to Lawson after deduction of commissions was applied in payment of indebtedness of the Theatre Company incurred in its reconstruction work.
Mr. Redrow, who represented the Theatre Company as its attorney in the matters pertaining to the making of the mortgage and issuance of the bonds, was also president of the Bank. Considerable correspondence took place between Mr. Joyce, secretary of the Theatre Company, and Mr. Redrow, president of the Bank, with respect to the delivery of the bonds to the Theatre Company, and on May 27th, 1931, Mr. Redrow wrote Mr. Joyce as follows:
"In reply to your letter of 26th instant re Blackwood Theatre, what is there that has to be done to provide for the bond issue for the Blackwood Theatre? If the first mortgage has been paid off so that these bonds are issued on the first mortgage, there is no reason why they cannot be signed and delivered. The only certification the bank makes to these bonds is that they are of a series amounting to a total of the bond issue, and that they are first mortgage bonds. If this is so, I will be glad to stop down any afternoon and have all signed and delivered."
On May 28th, 1931, Mr. Joyce wrote to Mr. Redrow as follows:
"Please be advised that the only mortgage against the Blackwood Theatre is the bond issue as I personally paid off the original mortgage to George W. Shaner Sons and the title is insured and everything in order for registration. I certainly would appreciate it if you could complete the Bank's end of the matter."
On June 2d 1931, Mr. Redrow wrote Mr. Joyce as follows:
"If you will get the searches showing the bond issue mortgage as a first mortgage for the Blackwood Theatre, I will stop at the bank tomorrow on my way home and sign all of the bonds so they can be delivered. At the time these bonds are delivered there should be turned over to the bank the title policy and searches and insurance policies covering this property." *Page 168 
On June 2d 1931, Mr. Joyce sent to Mr. Redrow the title policy and the canceled Shaner mortgage, calling his attention to the fact that on May 28th he had sent him all the fire insurance policies in order to remove any objections to the delivery of the bonds. On June 18th, 1931, Mr. Redrow wrote to Mr. Joyce as follows:
"In the matter of the Blackwood Theatre Bonds, in the amount of $75,000, I think that at least $50,000 of these bonds should be left with the bank as collateral security for the loans which the Blackwood Theatre Company now have with the bank. The total amount of the loans of the Blackwood Theatre Company at the bank at this time, is something like $27,500, and unless and until the Theatre Company arranges to pay off this loan, there should be some collateral with it."
Then on June 20th, 1931, Mr. Joyce wrote Mr. Redrow as follows:
"Answering yours of June 18th would advise that to do as you suggest would interfere with my plans for the disposal of these bonds.
"It is my preference that the Bonds be delivered to the Theatre Company, and I would appreciate it if you would so arrange, and oblige."
On June 22d 1931, Mr. Redrow wrote Mr. Joyce as follows:
"In reply to your letter of 20th instant, re Blackwood Theatre Company bonds, would say that I recall distinctly that when the last loan was made by the bank to this company, that these bonds were to be left with the bank as security, and I certainly would not approve the delivery of these bonds to you or to the Theatre Company, until the loans of the bank to the Theatre Company had been paid."
Despite these letters, the bank kept the entire $75,000 issue of bonds in its possession under the claim that they were held to secure the $20,000 note made by the Theatre Company on July 12th, 1927.
The evidence respecting the alleged pledge of these bonds as collateral for that note is such as to be wholly insufficient to convince me that there was a pledge made by the Theatre Company of this issue of bonds as claimed by the Bank. I have already referred to the minute of the meeting of the *Page 169 
Bank's board of directors on July 12th, 1927, and to the fact that no corporate action was taken by the Theatre Company authorizing the pledge of these bonds, and although the complainant contends that Mr. Joyce, the secretary of the Theatre Company, impliedly had the authority to make this pledge, I am convinced that he had no authority, either express or implied, to pledge the entire issue of bonds which the Theatre Company afterward authorized, and which bonds were intended to be sold and applied upon the indebtedness of the Theatre Company to all its creditors. Such a pledge would have made the Bank a preferred creditor, and there is no course of conduct proven in this case that would seem to me sufficient to invest Mr. Joyce with any authority to bind the company in the manner referred to, and there is a total absence of evidence of any ratification of such a pledge, even if it be assumed that the secretary ever proposed it to the Bank. Mr. Joyce may have had authority to conduct certain business for the Theatre Company, but certainly he had no authority to pledge this proposed issue of bonds as collateral for the indebtedness of $20,000 held by the Bank.
In this connection see the opinion of Vice-Chancellor Bigelow in Iback v. Elevator Supplies Co., 118 N.J. Eq. 90. In that case complainant sought to bind the defendant corporation by the action of its president, who promised for the company, in writing, to repurchase from its employes or members of their families, the shares of that company's capital stock purchased by its employes. There, on the authority of the decisions cited in the opinion, the vice-chancellor held, and properly so, that since by statute the management of the affairs of a corporation is committed to a board of directors, beyond the performance of acts of an ordinary nature which by usage or necessity are incident to his office, a president has no more authority over corporate property and funds than any other director, in the absence of special authority. In the present case the court is asked to give binding effect to the alleged action of a secretary of a corporation, having no special authority so far as the record discloses, in pledging all the bonds of a proposed issue of his *Page 170 
company to a single creditor whose debt was greatly inferior to the pledge in amount. It seems to me that this is both illegal and inequitable.
Nor can the doctrine of ratification aid the complainant; ratification is based on knowledge. Iback v. Elevator SuppliesCo., supra. Complainant says that Mr. Murphy, one of Mr. Joyce's co-directors in the Theatre Company, was present when Mr. Joyce undertook to bind the Theatre Company; but even this still leaves the record silent as to any knowledge chargeable to Mr. Smith, the third director of the Theatre Company. Murphy and Joyce, members of the board of directors of the Bank, and present at the meeting of July 12th, 1927, categorically deny that any pledge was made by Joyce, and Smith says that if made he neither knew of it, nor ratified it, nor approved it. So there can be no ratification.
However, I have reached the conclusion that these bonds were not even attempted to be pledged by Mr. Joyce, or anyone else acting for the Theatre Company, as security for the note made to the Bank. Prior to borrowing from the Bank $20,000, the Theatre Company had borrowed from two other banks an amount aggregating $22,500, and undoubtedly it was the purpose of the Theatre Company to pay off all these notes, as well as other indebtedness, from the proceeds of the sale of the bonds.
It is important in this case to consider the minutes of the meeting of the board of directors of the Bank on July 12th, 1927, as well as the minutes of the meeting of the board on December 13th, 1927, to which I will later refer, both of which minutes have been questioned because of alleged alterations and additions.
The minute book of the bank for the entire year of 1927 is in evidence; it is a small, black, loose-leaf book, unlocked, the pages of which are readily removable. From an examination of this book, and as appears by the testimony of Mr. Melcher, the handwriting expert, it shows that each page of the minutes for 1927 was written on either one of two certain typewriters, except the minute of July 12th, 1927, which was written on a typewriter different from the other two, and on paper of a different shade which very distinctly showed, when *Page 171 
it was first produced at the hearing in November, 1932, yellow discolorations on the edges, such as is caused by age or by exposure to light and dirt. In addition, it would seem that this minute was written by another person other than the one or more who wrote the remaining minutes in the book, because an examination of all the other minutes in the book shows that at the end of the paragraph, "The Board met on the above date with * * * in the chair," a period appears in all cases after the word "chair" except in the disputed minute, and that the next sentence in all the minutes except that of July 12th, 1927, reads, "Allthe members were present except. * * *" In the minute of July 12th, the word "the" is omitted and the paragraph reads, "All Members were present. * * *" In all of the minutes except that of July 12th, 1927, the word "members" commences with a small letter "m," but in the minute of July 12th that word commences with a capital letter "M." Mr. Melcher testified that the signature of the president to the minute of July 12th, 1927, appeared to him to have been written at a much later date.
The minute of December 13th, 1927, was written on one of the two typewriters used in writing all the other minutes except that of July 12th, but two paragraphs at the end of the minutes, reading:
"On motion President and Cashier authorized to execute Trust agreement on Blackwood Theatre Mortgage of $75,000.
"On motion the Bank was authorized to deliver the Bonds of the Theatre Company when their notes were paid."
appear beyond all reasonable doubt to have been written in at a date later than the date when the other portion of the minutes was written. An inspection of these paragraphs plainly indicates that the typewriter ribbon was more lightly inked, and from the testimony of Mr. Melcher, the handwriting expert, it is determined that these two paragraphs are out of line with the other paragraphs of the minutes.
It further appears that some time after the execution of this mortgage and before the correspondence which took place between Mr. Redrow and Mr. Joyce in 1931, above quoted, the Bank, complainant herein, had taken over or been consolidated *Page 172 
with the Blackwood Trust Company which held a note of the Theatre Company in the sum of $10,000, then reduced to $7,500. While the bank, complainant herein, up until the taking over of the Blackwood Trust Company note, held only one note, and that the $20,000 note in question, the minute, as will be noted, reads, "On motion the Bank was authorized to deliver the Bonds of the Theatre Company when their notes were paid."
An examination of this minute book discloses no other minutes which bear evidence of either substitutions, alterations, or additions thereto, and it appears to me that these minutes in dispute cannot be relied upon as evidence of a pledge of these bonds. Both Messrs. Murphy and Joyce deny that there was any pledge of these bonds made or attempted to be made at the meetings of the board of directors of the Bank, and while some of the directors of the Bank testified as to a pledge of these bonds by Mr. Joyce, I cannot place much reliance in their testimony because their recollection of what may have taken place at a board of directors' meeting held some five years or more previously must necessarily be very meager, and also because I fear their testimony may have been colored by what appeared to be in the minutes.
The letters which were written by Mr. Redrow to Mr. Joyce indicate very clearly, I think, that the claiming of these bonds by the Bank was an afterthought, and the addition to the minutes of December 13th, 1927, particularly with reference to the delivery of the bonds of the Theatre Company when their notes were paid, indicates that whoever made the addition had in mind that the Bank then held not only the $20,000 note, but also the $7,500 note acquired from the Blackwood Trust Company.
The Bank, at the time it made the loan of $20,000 to the Theatre Company on its promissory note on July 12th, 1927, either knew or should have known of the resolution authorizing this loan passed by the board of directors of the Theatre Company on June 7th, 1927, to which reference has been made, and perhaps knew also the plan of the Theatre Company to liquidate that note and the notes in other banks and the indebtedness incurred by the Theatre Company in its *Page 173 
reconstruction program, from the sale of the first mortgage bonds to be later issued; yet the total amount of the issue of bonds as proposed at that time was $50,000, and it is highly improbable that the Theatre Company or any of its officers could at that time have pledged to the Bank $75,000 of first mortgage bonds as the Bank afterward contended. When it was decided by the stockholders and directors of the Theatre Company to make this mortgage to the Bank as trustee and issue its bonds, the Theatre Company was represented by Mr. Redrow, who was also president of the Bank and its attorney, and certainly if this issue of bonds was ever intended to have been pledged to the Bank as collateral for this $20,000 loan, he would have caused a resolution to that effect to have been passed by the directors of the Theatre Company and formal pledge made. All three of the directors of the Theatre Company, Messrs. Murphy, Joyce and Smith, deny that any such pledge was ever made to the Bank. The pledge of the entire issue of $75,000 in first mortgage bonds as collateral for the payment of a note of $20,000, when the indebtedness for the reconstruction of the theatre aggregated $70,000, of which indebtedness $22,500 was owing to other banks, $15,000 to the contractor and a considerable sum to Messrs. Joyce and Murphy, would constitute a preference to the Bank which would appear to be entirely unreasonable under the circumstances. To establish this pledge, complainant depends upon the minutes of the Bank and the testimony of some of the directors of the Bank as to their recollection. The circumstances surrounding the whole transaction are such as to negative the force of this sort of proof to establish the complainant's case. I think that the correspondence which took place between Mr. Joyce and Mr. Redrow clearly confirms that conclusion, taking into account the fact that default was made in the payment of interest on the $20,000 note just prior to that correspondence. The Bank was merely trying to get security for an indebtedness of $27,500 then due from the Theatre Company, and took advantage of the fact that it had in its possession as trustee, bonds which under its agreement with the Theatre Company should have been authenticated and delivered to the treasurer of that company. The $20,000 *Page 174 
note which the Bank held was never renewed, and it was not until nearly three years after the making of the $20,000 note that the Bank for the first time made the claim that it was entitled to hold this entire issue of the bonds as collateral for that note.
The burden of proof is upon the Bank to establish by competent evidence that there was a pledge of the bonds referred to herein; the observations hereinbefore made lead me to conclude that the Bank has failed to carry this burden, and therefore the bill to foreclose will be dismissed.
The counter-claim filed by the intervening defendants and the Theatre Company prays that the Bank may be enjoined and commanded by the decree of this court to perform its trust and to certify and deliver the bonds secured by the mortgage set forth in the bill of complaint to the Theatre Company, to the end that they may be delivered to the beneficial owners thereof. Having determined that the Bank has no claim to the ownership of this issue of bonds, and that its bill should be dismissed, the only interest which the Bank has in the bonds is that of trustee. Proof was offered by the counter-claimants with respect to their interest in the bonds which was not controverted by the complainant, so that it appears that the counter-claimants are the beneficial owners of these bonds. The complainant will be required to certify and deliver the bonds to the Theatre Company to the end that they may be delivered to the beneficial owners thereof.
A decree will be advised in accordance with these conclusions. *Page 175