The plaintiff, King Machine Company, is a corporation of this State engaged in the business of *Page 232 
manufacturing oil burners. The company was organized in 1944. At the time when the series of transactions began with which this litigation is concerned, the common stockholders were:
Leonard C. Post, 11 shares,
Edith M. Post, 1 share,
Edgar L. Herz, 12 shares,
J. Kirk Hopper, 12 shares,
Charles K. Smith, 12 shares,

The preferred stockholders were:
Leonard C. Post, 79 shares,
Saddle River Reformed Church, 27 shares,
Edgar L. Herz, 11 shares,
Louis Schneider, 20 shares,
R.A. Richardson, 2 shares,
Edith M. Post, 5 shares,
J. Kirk Hopper, 5 shares,
Charles K. Smith, 5 shares.

Post was the president, treasurer and general manager. Edith M. Post was vice-president and Edgar L. Herz was secretary. All three were directors.
In January of 1946 the corporation was in need of financial assistance. Post and Herz contacted the defendant, Louis Caporaso, who agreed to invest in the company. He also agreed to make loans to the company as the occasion required.
Smith and Hopper surrendered their common stock. They each received in return a promissory note for $2,500 payable in one year from February 18, 1946. The corporate minutes contained a statement that the notes were to be paid if the corporation continued in existence and if it made a profit. The notes were not paid.
Caporaso purchased 50 shares of preferred stock with a par value of $100 per share for which he paid $3,500. This stock was registered on the company books in the name of Mae Caporaso, the wife of Louis Caporaso. Twelve shares of common stock were given to Caporaso as a bonus. These shares were registered in the name of Mae Caporaso. Later one of the shares of common stock was transferred to Louis Caporaso. Mae Caporaso was elected treasurer of the company *Page 233 
and one of the directors. As treasurer she was authorized to sign the company checks. She immediately gave a power of attorney to Louis Caporaso who thereafter functioned in her place as a director and also signed the checks of the corporation.
Caporaso purchased an additional 21 shares of the preferred stock for which the par value of $100 a share was paid. Three of the shares were registered in the name of Mildred Caporaso, a sister of Louis Caporaso, and the balance of them were registered in the name of Mae Caporaso. Caporaso later took over the two shares of preferred stock held by Richardson; the preferred stock of Herz and Smith amounting to 32 shares and the 12 shares of common stock held by Herz.
At the time of his retirement from the company, Caporaso held 103 shares of preferred stock for which the corporation had received $5,400 from Caporaso; $200 from Richardson and $3,200 from Herz and Smith. He also held 24 shares of common stock. Caporaso also loaned the corporation the sum of $11,800 in cash and turned over to it accounts receivable having a book value of $2,314. Thus the credits advanced to the company in one form or another totalled the sum of $22,914.
After being with the corporation for about one year Caporaso decided that he was not receiving enough return on his money and determined to withdraw. A meeting was held at which there were present the Caporasos, Herz and Post. The preferred stockholders, Saddle River Reformed Church, Hopper and Schneider were not notified of the meeting, nor were they informed as to the action taken subsequently. Caporaso surrendered the 103 shares of preferred stock and the 24 shares of common stock. The certificates were cancelled. In return he received $10,000 in cash; oil burners valued at $11,000 an account receivable of $4,966.40 and promissory notes in the sum of $4,468.10 for a total of $31,334.50. Two of the notes totalling $400 were paid before payment of the remainder was stopped. The amount received by Caporaso in excess of the sum originally invested was $8,420.50. This amount *Page 234 
presumably was the value placed upon the common stock repurchased by the company.
Two accountants testified concerning the financial condition of the company at the time of the Caporaso withdrawal. Their testimony was very unsatisfactory. Neither had made a regular audit. No inventory check was made, nor was any attempt made to trace a large number of items labelled "cash purchases." Both accountants did agree, however, that the liabilities of the company exceeded its assets. The plaintiff's accountant placed the excess at $11,000. The defendant's accountant, while asserting that the corporation was solvent, produced work sheets on which he showed that the liabilities exceeded the assets by the sum of $7,090.10. Whatever might be the financial condition of the company at the time of the Caporaso withdrawal, it can be said with certainty that there was no surplus and there was, to say the least, a severe impairment of capital.
Among the conditions imposed upon the corporation by Caporaso was one requiring that all corporate records were to be retained by Caporaso's attorney until the notes were paid. Another required the corporate officers to consult with Caporaso before obligating the company to an amount in excess of $25.
The Caporaso stock was marked "cancelled" on the books of the company on April 3, 1947, though the payments to Caporaso, with the exception of the execution of the promissory notes, had been made before that time. On April 3 a new investor, Philip E. Moreton, joined the company with an initial investment of $10,000 for which he received 12 shares of common stock. He also made loans to the corporation to the extent of $2,775. Upon the payment by Moreton of the $10,000 he was made an officer and director of the company. On the insistence of Post, Moreton signed the promissory notes to Caporaso, though at that time he had not seen the corporate records which were in the possession of Caporaso's attorney. His suspicions becoming aroused by the continued absence of the corporate records, Moreton stopped payment on the promissory notes after two of them in the amount of $400 *Page 235 
had been paid. He also demanded the books of the company which were finally surrendered to him by Caporaso's attorney on April 20, 1947. An accountant was immediately engaged to examine the records. As a result of the examination the facts outlined above were disclosed and this litigation resulted.
I am of the opinion that the redemption of the stock must be set aside. Whether we regard the form, and consider that Mae Caporaso was the stockholder and director, or the substance, and regard Louis Caporaso as the real party in interest both as a stockholder and director, the result is a contract between a director and his company. The agreement was entered into and consummated without the knowledge and consent of all of the stockholders. As a result of the transaction, Caporaso received for the common stock which was practically valueless the sum of $8,420.50. In addition the corporation was stripped of a large part of its available inventory. Such a contract cannot stand.U.S. Steel Corporation v. Hodge, 64 N.J. Eq. 807; Charles R.Hedden Company v. Dozier, 99 N.J. Eq. 543. And further, at the time the common stock was purchased from Caporaso, the corporation had no surplus and its capital had been impaired. Under such circumstances, a purchase of its own stock by the corporation works a reduction of its capital. Such a reduction must be made in the manner provided by statute. R.S., 14:11.Iback v. Elevator Supplies Company, Inc., 118 N.J. Eq. 90.
The redemption of the preferred stock was equally defective. No notice was given to the other preferred stockholders nor were they given an opportunity to sell to the corporation a proportionate part of their holdings. The purchase of the preferred stock must also be set aside. Berger v. U.S. SteelCorporation, 63 N.J. Eq. 809; General Investment Co. v.American Hide Leather Co., 97 N.J. Eq. 226, affirmed98 N.J. Eq. 326.
The defendants will be directed to surrender to the corporation the unpaid promissory notes in the amount of $4,068.10. They will also be ordered to repay to the corporation the sum *Page 236 
of $13,152.40. The shares of preferred and common stock will then be reinstated.
Judgment accordingly.