In re BELL TONE RECORDS, Inc.

No. B-73-49.

United States District Court
D. New Jersey.

Oct. 31, 1949.

Max Rosenstein, Newark, N. J., for trustee.

Maurice Jordan Price, Newark, N. J., for petitioner.

SMITH, District Judge.

This matter is before the Court on two petitions for review filed herein pursuant to Section 39, sub. c of the Bankruptcy Act as amended, 11 U.S.C.A. § 67, sub. c—the one by Shirley Droutman, a creditor, and the other by James R. Digney, the trustee in bankruptcy. The ultimate questions raised are identical, although presented differently in the respective petitions.

## Facts

The bankrupt, a New Jersey corporation, was organized in January of 1946, and upon its organization issued 90 shares of no par value stock, 40 shares to Josephine Popovich, 5 shares to Nicholas Popovich, her husband, 40 shares to Shirley Droutman, and 5 shares to Ben Droutman, her husband. Thereafter a disagreement among the officers led to negotiations for the repurchase by the bankrupt of the stock held by Shirley and Ben Droutman. This stock was repurchased on January 16, 1947 for $19,500, the full amount invested by these stockholders. It would appear that the stock was thereafter held by the bankrupt as treasury stock.

It was further agreed first, that Shirley Droutman would pay to the Ridgefield National Bank a corporate debt in the amount of $3000; second, that Ben Droutman would cancel a debt in the amount of $5350, due from the corporation, representing advances previously made by him to the bankrupt; and third, that the total indebtedness of the bankrupt in the amount of $8350, would be paid to Shirley Droutman. The total sum due Shirley Droutman was then $27,850, which the bankrupt agreed to pay, with interest, in installments.

The bankrupt executed and delivered to Shirley Droutman two mortgages, the one covering the real property therein described, and the other covering the personal property therein described. It is conceded that these mortgages were given by the bankrupt to secure payment of the total indebtedness in the amount of $27,850. This further appears from the express terms and conditions embodied in the mortgages.

The bankrupt was not insolvent in January 1947 when these transactions were consummated, but it appears that it was in a precarious financial condition. The capital was impaired by an operating deficit of $1800, for the year 1946, and the bankrupt lacked sufficient cash to pay its only outstanding debt in the amount of $231. It is clear that under these circumstances the repurchase by the bankrupt of its own stock and the creation of an additional debt for the purchase price further impaired the capital.

The bankrupt paid to Shirley Droutman on account of the total indebtedness the sum of $6600, $3828.46 of which was credited to principal and $2771.54 of which was credited to interest, as appears from a memorandum of payments annexed to the bond which was given with the real property mortgage. Payments were made periodically in 1947 and 1948 when there was neither net earnings or surplus from which such payments could be made; it appears from the accountant's testimony that the bankrupt suffered an operating loss in the amount of $10,377.53 in the year 1947. It necessarily follows that these payments were made not out of surplus but out of capital.

The bankrupt sold 30 shares of no par value stock on July 3, 1947: 5 shares to Albert Simon, 12½ shares to Charles Shenier, and 12½ shares to Frank Vita. The consideration was $4800. The bankrupt issued 50 shares of no par value stock to Donald Gabor in August 1948, 20 shares of which was new stock for which no consideration was paid, and 30 shares of which represented the shares previously sold to Simon, Shenier and Vita, and which were apparently purchased by Gabor.

A voluntary petition in bankrupcy was filed herein on February 14, 1949, and an order of adjudication was entered thereon on the same date. Thereafter, on April 19, 1949, the Referee in Bankruptcy entered an order in which he directed the trustee to sell the real and personal property covered by the mortgages free and clear of all liens. Pursuant to the said order these assets were sold at public auction for $16,024.60, $13,000.00 for the real property and $3024.60 for the personal property.

The confirmation of the sale was opposed by Shirley Droutman, who apparently asserted a right to the property, although it does not appear that she ever applied to the Referee for leave to foreclose the mortgages. The validity of the mortgages was attacked by the trustee in a petition filed on April 18, 1949.

## Discussion

The validity of the chattel mortgage is challenged by the trustee, who urges that the said mortgage is void as against creditors because of the insufficiency of the affidavit of consideration. It must be conceded that a chattel mortgage is void as against creditors, within the meaning of the statute, unless there is "annexed thereto an affidavit or affirmation, made and subscribed by the holder of such mortgage, his agent or attorney, stating the consideration of such mortgage and, as nearly as possible, the amount due and to become due thereon." R.S. 46:28-5, N.J.S.A. 46:28-5. The question presented is whether or not the affidavit of consideration meets the requirements of the statute. The answer to this question, however, is not determinative of the issues raised by the arguments of counsel.

The affidavit of consideration is lacking in meticulous detail and is probably subject to criticism, but it is our opinion that it meets the statutory requirements. A substantial compliance with the statute is essential to the validity of a chattel mortgage, but the statute should not be so construed and applied as to invalidate a chattel mortgage given in good faith to secure a debt honestly incurred. It has been held by the courts of this state that a substantial compliance with, rather than a technical adherence to the statutory provisions, is all that is required. American Soda Fountain Co. v. Stolzenbach, 75 N.J.L. 721, 68 A. 1078; Howell v. Stone & Downey, 75 N.J. Eq. 289, 71 A. 914; Shupe v. Taggart, 93 N.J.Law. 123, 107 A. 50; Hunt v. Ludwig, 93 N.J.Eq. 314, 116 A. 699; Fitzpatrick v. Barnard Phillips & Co. Inc., 95 N.J.Eq. 363, 123 A. 245; Abeles v. Guelick, 101 N.J.Eq. 180, 137 A. 853; Fidelity Union Trust Co. v. Augelli, 125 N.J.Eq. 246, 4 A.2d 495. There are many other cases, but we see no reason to cite them.

A more difficult question is presented by the claim of Shirley Droutman, to whom there is still due and owing $24,021.54. There are two separate and distinct debts included in this claim: the debt created by the purchase by the bankrupt of its own stock, and the debt created by the advance of funds to pay the debts of the bankrupt. There are actually two severable claims, each of which must be regarded as separate

and distinct for the purposes of this proceeding. The claim for the purchase price of the stock is enforceable only after claims of general creditors have been satisfied; the claim for monies advanced on behalf of and to the bankrupt is enforceable and must be accorded such priority as the law requires. The federal laws are determinative of the relative priorities of these claims and the claims of other creditors.

It is well established that the federal law, and not the state law, is determinative of the relative priorities of claims asserted against a bankrupt estate. Prudence Corporation v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293; Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970. The judicial administration of bankrupt estates is governed solely by the bankruptcy laws, "and it is for the (federal court)—not without appropriate regard for rights acquired under rules of state law—to define and apply federal law in determining the extent to which the inequitable conduct of a claimant in acquiring or asserting his claim in bankruptcy requires its subordination to other claims which, in other respects, are of the same class." Prudence Corporation v. Geist, supra [316 U.S. 89, 62 S.Ct. 982]. See also Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

Claim for the Purchase Price of Stock

The courts of this state have held that a corporation may purchase its own stock for legitimate corporate purposes, Chapman v. Iron Clad Rheostat Co., 62 N.J.L. 497, 41 A. 690; Berger v. United States Steel Corp., 63 N.J.Eq. 809, 53 A. 68, but such a purchase may be made only out of surplus. Iback v. Elevator Supplies Co., 118 N.J.Eq. 90, 177 A. 458; Hoops v. Leddy, 119 N.J. Eq. 296, 182 A. 271; King Mach. Co. Inc., v. Caporaso, 2 N.J.Super 230, 63 A.2d 270. The purchase by a corporation of its own stock, except out of surplus, works a reduction of capital which may be effected only in the manner prescribed by statute. Iback v. Elevator Supplies Co.; King Mach. Co. Inc. v. Caporaso, supra.

The pertinent provisions of the New Jersey statute, R.S. 14:11–5, N.J.S.A. 14:- 11–5, authorize the reduction of capital by the method therein prescribed, but require that "a certificate in writing stating the fact of the reduction of the capital of the corporation and the manner of effecting the same and the terms and conditions thereof * * * be published for three weeks successively, * * * in a newspaper published in the county in which the principal office of the corporation is located, the first publication to be made within thirty days after the filing of the certificate * * * in the office of the secretary of state * * *."

The statute further provides that in default of such publication "directors of the corporation shall be jointly and severally liable for all debts of the corporation contracted *before the filing of the certificate,* and the stockholders shall also be liable for *such sums as they may respectively receive* of the amount so reduced." (Emphasis by the Court.) The personal liability of stockholders, at least to creditors, is not open to question under this provision. See Siegman v. Electric Vehicle Co., 72 N.J.Eq. 403, 65 A. 910, 912.

The statute expressly prohibits the withdrawal of capital "except as authorized by law." The pertinent provisions of the statute, R.S. 14:8–19, N.J.S.A. 14:8–19, reads as follows: "The directors of a corporation (shall not) * * * divide, withdraw, or in any way pay to the stockholders or any of them, any part of the capital stock of the corporation or reduce its capital stock except as authorized by law." This statute imposes upon the directors a personal liability for its violation.

The power of a corporation to purchase its own stock for legitimate corporate purposes, although recognized by the law, is not absolute. This power is clearly limited by the express provisions of the cited statute. The purchase by a corporation of its own corporate stock which results in a reduction of capital is void against creditors and imposes liability on the stockholders for such sums as they receive, unless the fact of such reduction is published

as required by statute. Gibbon v. Hill, 3 Cir., 79 F.2d 288.

It necessarily follows that the repurchase by the bankrupt of its own stock was void as against creditors, no certificate having been either filed or published as required by statute. It also follows that all payments on account of the purchase price made to the stockholder, Shirley Droutman, in 1947 and 1948, when the bankrupt was operating at a substantial loss, impaired the capital and were therefore unlawful. However, the ultimate decision of the Court does not rest entirely on these conclusions.

The claim of Shirley Droutman for the purchase price of the stock may not be accorded the usual priority notwithstanding the validity of the mortgages given to secure the payment. The recognition and payment of this claim as one entitled to priority would deplete, if not exhaust, the bankrupt estate to the injury of other creditors. This claim must, therefore, be subordinated to the claims of other creditors notwithstanding the mortgages.

The rule adopted by the Court of Appeals, Fifth Circuit, in the case of Robinson v. Wangemann, 75 F.2d 756, is applicable here. It is therein stated, 75 F.2d at page 757: "A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of the assets to the stockholder. * * * When such a transaction is had, regardless of the good faith of the parties, it is essential to its validity that there be sufficient surplus to retire the stock, without prejudice to creditors, *at the time payment is made out of assets.* In principle, the contract between (the stockholder) and the corporation (is) executory until the stock (shall) be paid for in cash. It is immaterial that the corporation was solvent and had sufficient surplus to make payment when the agreement was entered into. It is necessary to a recovery that the corporation

(shall) be solvent and have sufficient surplus to prevent injury to creditors *when the payment is actually made.*" (Emphasis by the Court.) See also In re Fechheimer Fishel Co., 2 Cir., 212 F. 357; M. V. Moore & Co. v. Gilmore, 4 Cir., 216 F. 99; Coleman v. Tepel, 3 Cir., 230 F. 63; First Trust Co. v. Illinois Cent. R. Co., 8 Cir., 256 F. 830; Keith v. Kilmer, 1 Cir., 261 F. 733, 9 A.L.R. 1287; Matthews Bros. v. Pullen, 1 Cir., 268 F. 827; Boggs v. Fleming, 4 Cir., 66 F.2d 859. Payment cannot be made where, as here, insolvency and the rights of other creditors intervene before the obligation to pay matures. Ibid.

It appears from the evidence (Exhibit M-2) that the bankrupt made monthly payments to Shirley Droutman pursuant to the terms of their agreement. The last payment was made on October 29, 1948. These payments may not be credited to the claim for the purchase price of the stock but must be credited to the claim for the monies advanced on behalf of and to the bankrupt. The allocation of these payments would permit Shirley Droutman to recover a part of the purchase price of the stock and avoid the personal liability created by the statute hereinabove quoted. The allocation of the payments to the purchase price of the stock, or any part thereof, would violate not only the statute but also the equitable principles by which the court of bankruptcy must be guided in the administration of assets.

### Claim for Monies Advanced on Behalf of and to the Bankrupt

This claim is a valid claim and must be accorded the priority to which the mortgages entitle it. The claimant may not be denied her rights as a creditor even though she was a stockholder at the time the debt was incurred. The payments heretofore made, both principal and interest, must be credited to this claim alone.

It appears from the memorandum filed by the Referee that he has allowed interest from October 28, 1948, the approximate date of the last payment, on the full amount of $8350. It is our opinion that the claimant is entitled to interest only on the unpaid balance as of that date.

The claim should be re-examined in the light of the conclusions herein expressed.

### Claim of Nicholas Popovich

■ An examination of the schedules discloses a debt due Nicholas Popovich, an officer of the bankrupt. It appears from the evidence that this creditor was a party to the transactions here in question and executed the mortgages. It would seem that under these circumstances his claim should be subordinated to both claims of Shirley Droutman.

It is further recommended that this claim be re-examined in the light of the agreement (T-13) between Nicholas Popovich and others and the Bell Tone Records, Inc. We direct the attention of the Referee to paragraph 11 of this agreement.

### Conclusions

I. The order of the Referee directing the sale of assets free and clear of all liens, the liens, if any, to attach to the proceeds, was not error. The sale should, therefore, be confirmed.

II. The claims of creditors should be classified and allowed in the following order of priority:

(a) The claim of Shirley Droutman for monies advanced on behalf of and to the bankrupt. The payments heretofore made to Shirley Droutman must be credited to this claim alone and the balance due thereon allowed as a superior claim.

(b) The valid claims of general creditors, except the claim of Nicholas Popovich.

(c) The claim of Shirley Droutman for the purchase price of the stock.

(d) The claim of Nicholas Popovich, unless it is determined that the agreement (T-13) was an effective release of this claim. We make no decision concerning the effect of this agreement because there is no question before us concerning it.

III. This matter is referred to the Referee for further proceedings consistent with this opinion.